MELODY WIRTH, Plaintiff, *v.* THE CITY OF HIGHLAND PARK, Defendant and Third-Party Plaintiff-Appellee.—(DANIEL WIRTH, Third-Party Defendant-Appellant.)

Second District   No. 81-367

Opinion filed December 17, 1981.

Donald Ridge, of Waukegan, for appellant.

David R. Quade, of Diver, Bollman, Grach and Quade, of Waukegan, for appellee.

JUSTICE REINHARD delivered the opinion of the court:
We have allowed this appeal from an interlocutory order which was certified to this court by the trial court pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308). The question raised is whether interspousal tort immunity (Ill. Rev. Stat. 1979, ch. 40, par. 1001) precludes a third-party action for statutory contribution (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)) where the third-party defendant sought to be joined was married to the plaintiff at the time the cause of action arose and the plaintiff's original action is based on a common law tort. The trial court denied the third-party defendant-spouse's motion to dismiss the third-party complaint based upon interspousal tort immunity and further found that the order involved a question of law as to which there is a substantial ground for a difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation.

The complaint alleged that on March 21, 1980, Melody Wirth, plaintiff, was a tenant in a building "owned, operated, managed, maintained and controlled" by the defendant, City of Highland Park (city); that on that date plaintiff slipped and fell down a stairway in said building; that the city was guilty of one or more acts of negligence; and that as a proximate result of that negligence, she sustained serious injury. The city filed an answer admitting ownership of the building and generally

denying the other material allegations of the complaint. It then filed a third-party complaint against Daniel Wirth, third-party defendant, which alleged that on March 21, 1980, he "operated, managed, maintained and controlled the premises"; that if plaintiff was injured by someone other than herself, it was a result of the negligence of Daniel Wirth; and that it has a right of contribution from Daniel Wirth pursuant to section 1(a) of "An Act in relation to contributions among joint tort-feasors" (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)). Daniel Wirth moved to dismiss the third-party complaint against him based upon the statutory defense of interspousal tort immunity (Ill. Rev. Stat. 1979, ch. 40, par. 1001), and attached to the motion an affidavit stating that Melody Wirth was the spouse of Daniel Wirth on March 21, 1980, and they remained husband and wife. The trial court denied the motion to dismiss and this interlocutory appeal ensued.

At issue is an interpretation of the interplay between two statutes, namely, that providing for interspousal tort immunity (Ill. Rev. Stat. 1979, ch. 40, par. 1001) and that allowing a third-party action for contribution (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)), which respectively provide as follows:

"A married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried; provided, that neither husband nor wife may sue the other for a tort to the person committed during coverture. An attachment or judgment in such action may be enforced by or against her as if she were a single woman." Ill. Rev. Stat. 1979, ch. 40, par. 1001.

"Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).)

A brief historical review is necessary.

At common law, husband and wife were merged into one legal entity—that of the husband. Blackstone wrote that "[b]y marriage, the husband and wife are one person in law; that is, the very being or legal existence of the woman is suspended during marriage, or at least is incorporated and consolidated into that of the husband." (Note, *Domestic Relations—Abrogation of Interspousal Immunity—An Analytical Approach*, 19 DePaul L. Rev. 590, 591 n.4 (1970), quoting 1 Blackstone, Commentaries 442 (1768).) The Illinois legislature provided for the legal emancipation of women by enacting the Married Women's Act of 1874 (now codified at Ill. Rev. Stat. 1979, ch. 40, pars. 1001-1021). (See *Brandt*

*v. Keller* (1952), 413 Ill. 503, 507, 109 N.E.2d 729.) This act provided, in substance:

"* * * a married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried; that if husband and wife are sued together, the wife may defend in her own right; that a wife may make contracts and incur liabilities to the same extent and in the same manner as if she were unmarried; that the husband is not liable for his wife's torts, except in cases where he would be jointly responsible with her if the marriage did not exist; that a wife has the right to retain her earnings, but she is not entitled to compensation for labor performed for her minor children or her husband; that a wife may own, control and convey property, and the rents and profits therefrom, and that if either husband or wife unlawfully obtains or retains possession or control of property belonging to the other, either before or after marriage, the owner may maintain an action therefor, to the same extent as if he or she were unmarried." *Brandt v. Keller* (1952), 413 Ill. 503, 507, 109 N.E.2d 729.

In *Brandt v. Keller* (1952), 413 Ill. 503, 109 N.E.2d 729, the Illinois Supreme Court construed the phrase "in all cases" in the Married Women's Act of 1874 (Ill. Rev. Stat. 1951, ch. 68, par. 1, now at Ill. Rev. Stat. 1979, ch. 40, par. 1001). The phrase referred to a married woman maintaining an action in tort. The court determined that the phrase must be interpreted to include any actions by or against a married woman. (413 Ill. 503, 512, 109 N.E.2d 729.) This included tort actions against her husband. (413 Ill. 503, 513, 109 N.E.2d 729.) The court rejected the public policy argument that domestic tranquility demanded a continuation of the interspousal tort immunity, stating that "when one spouse assails another or brings suit, there is not much domestic tranquility left to disrupt." (413 Ill. 503, 511, 109 N.E.2d 729.) In 1953, the Illinois legislature amended the Married Women's Act of 1874 to provide that "neither husband nor wife may sue the other for a tort to the person committed during coverture." (Now codified at Ill. Rev. Stat. 1979, ch. 40, par. 1001.) The effect of the amendment was to re-establish what had been the common law rule of interspousal tort immunity. A succession of Illinois opinions thereafter construed the amendment as a substantive bar to personal injury litigation between spouses. (See *Wartell v. Formusa* (1966), 34 Ill. 2d 57, 60, 213 N.E.2d 544; *Heckendorn v. First National Bank* (1960), 19 Ill. 2d 190, 193, 166 N.E.2d 571.) In *Heckendorn,* the court found that the intent of the amendment was to "prevent a cause of action" for torts committed during coverture "from coming into being." 19 Ill. 2d 190, 193, 166 N.E.2d 571.

Recently, the Illinois Supreme Court held that a third-party insurance company cannot raise the interspousal tort immunity as a defense to an

action brought by one spouse seeking to recover for injuries under an uninsured motorist provision. (*Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 396 N.E.2d 528.) The court stated that "＊ ＊ ＊ the effect of the 1953 amendment was not to destroy the cause of action of the injured spouse, but to confer immunity on the tortfeasor spouse, which like a defense based upon the statute of limitations can be waived by the defendant spouse." (77 Ill. 2d 384, 390, 396 N.E.2d 528.) The immunity is thus seen now as a procedural, not a substantive, bar to actions between spouses.

With respect to the doctrine of contribution among joint tortfeasors, the rule at common law was that contribution was not permitted. While traditionally joint tortfeasors have been jointly and severally liable to a plaintiff, contribution, which only affects the rights of defendants between themselves, has been denied. The rule denying contribution historically evolved from an unwillingness to grant relief to intentional wrongdoers for the consequences of their wrongful acts. (See *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 7-9, 374 N.E.2d 437, *modified* (1978), 70 Ill. 2d 16.) Until the *Skinner* decision, Illinois courts attempted to expand the implied indemnity concept, based upon active-passive negligence in order to ameliorate the harsh effects of the bar to contribution. (See, *e.g., Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58; *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630; *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.* (1965), 32 Ill. 2d 600, 208 N.E.2d 573.) Finally, our supreme court concluded in *Skinner* that they would judicially abolish this unsound and unjust doctrine which was judicially created, and held:

> "We are of the opinion that there is no valid reason for the continued existence of the no-contribution rule and many compelling arguments against it. We agree with Dean Prosser that '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free.' Prosser, Torts sec. 50, at 307 (4th ed. 1971)." (70 Ill. 2d 1, 13, 374 N.E.2d 437.)

Soon thereafter, the Illinois General Assembly enacted legislation approved on September 14, 1979, and applicable to all causes of action arising on or after March 1, 1978, establishing legislatively a right of contribution. Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*

Turning to the case at bar, Daniel Wirth, the third-party defendant, argues that in order to bring an action for contribution pursuant to the

statute on contribution among joint tortfeasors, it is essential that the injured party has a legally recognized remedy against both the party seeking contribution and the party from whom contribution is sought. He states that contribution may not lie under the statute unless the third party is "subject to liability in tort" to the plaintiff. (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) Since one spouse cannot maintain an action in tort against the other (Ill. Rev. Stat. 1979, ch. 40, par. 1001), a spouse, he argues, is not subject to liability in tort to the other spouse and therefore a third-party action for contribution may not lie. He further contends that the doctrine of interspousal immunity as interpreted in Illinois and in other jurisdictions precludes an action for contribution when the injured party and the person sought to be joined were married at the time of the occurrence.

The city asks this court to read the interspousal tort immunity statute (Ill. Rev. Stat. 1979, ch. 40, par. 1001) *in pari materia* with the statute concerning contribution among joint tortfeasors (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)). The city argues that: (1) the public policy reasons behind interspousal immunity do not apply to actions for contribution among joint tortfeasors; (2) the doctrine of contribution involves only the substantive rights between the tortfeasors; (3) to allow spousal immunity to bar the right of contribution would allow the spouse tortfeasor to profit at the expense of the nonspouse tortfeasor; (4) the trend in Illinois is to do away with bars to contribution; and (5) the majority of States have limited or totally abrogated the interspousal tort immunity.

There being no other Illinois court to have considered this question, we first turn to other jurisdictions which have considered the question. Among the States, there has been a wide difference of opinion concerning the interaction of interspousal tort immunity and contribution among joint tortfeasors. (See Note, *Contribution Among Joint Tortfeasors When One Tortfeasor Enjoys a Special Defense Against Action by the Injured Party*, 52 Cornell L.Q. 407, 408-12 (1967).) In the past, courts deciding this particular issue have denied contribution to the third-party against the spouse on the basis that no element of common liability of both tortfeasors to the injured spouse existed. (Annot., 19 A.L.R.2d 1003 (1951).) However, a trend began with the Pennsylvania case of *Fisher v. Diehl* (1945), 156 Pa. Super. 476, 40 A.2d 912, to abrogate the doctrine of interspousal immunity and allow contribution to the third party against the tortfeasor-spouse. Currently, 25 States have totally abolished the doctrine of interspousal tort immunity; five States have abrogated the doctrine with regard to automobile accidents; three States have abrogated the doctrine as applied to intentional torts; six States still adhere to the doctrine in general, but allow contribution. (See *Renfrow v. Gojohn* (Mo. App. 1980), 600 S.W. 2d 77, 80-82 (nation-wide compilation of cases concerning interspousal immunity).) Both commentators on this subject and the trend of the more

recent cases appear to reject the common law rule of interspousal tort immunity. (See *Lusby v. Lusby* (1978), 283 Md. 334, 390 A.2d 77.) The Restatement (Second) of Torts also rejects the doctrine of interspousal tort immunity. Restatement (Second) of Torts §895F, comment a (1979).

In *Fisher v. Diehl* (1945), 156 Pa. Super. 476, 40 A.2d 912, an accident occurred between two cars, one driven by Richard Diehl and the other by Maurice Fisher in which his wife, Louise Fisher, was a passenger. Mrs. Fisher was injured as a result of the accident and brought suit against Diehl for those injuries. Diehl filed a petition alleging that Fisher was jointly negligent and should therefore be joined as a party defendant to Mrs. Fisher's suit. The Pennsylvania court allowed Diehl's petition, stating that this was not equivalent to permitting an action by the wife against her husband. (156 Pa. Super. 476, 484, 40 A.2d 912, 917.) The court determined that allowing the contribution "was in the interest of right and justice, and that to have refused to have done so would have been an injustice to the original defendant." (156 Pa. Super. 476, 487, 40 A.2d 912, 918.) The Pennsylvania court did limit the action in that the injured wife could not enforce any judgment obtained against the tortfeasor husband. (156 Pa. Super. 476, 483, 40 A.2d 912, 916.) Other courts have abrogated interspousal tort immunity with respect to actions for contribution on the grounds that the action for contribution is really an action separate from the original suit for damages and that equity and judicial fairness demand that contribution be allowed. *Paoli v. Shor* (Fla. App. 1977), 345 So. 2d 789, *aff'd sub nom. Shor v. Paoli* (Fla. 1977), 353 So. 2d 825; *Bedell v. Reagan* (1963), 159 Me. 292, 192 A.2d 24; *Hayon v. Coca Cola Bottling Co.* (1978), 375 Mass. 644, 378 N.E.2d 442; *Zarrella v. Miller* (1966), 100 R.I. 545, 217 A.2d 673, *contra, Shell v. Watts* (1972), 125 Ga. App. 542, 188 S.E.2d 269, *rev'd in part on other grounds* (1972), 229 Ga. 474, 192 S.E.2d 265; *Ennis v. Donovan* (1960), 222 Md. 536, 161 A.2d 698; *Martinez v. Lankster* (Mo. App. 1980), 595 S.W.2d 316.

The Louisiana Supreme Court has limited its interspousal tort immunity act (La. Rev. Stat. Ann. §9:291 (West 1965)) to apply only to suits between spouses. (*Smith v. Southern Farm Bureau Casualty Insurance Co.* (1965), 247 La. 695, 706-07, 174 So. 2d 122, 126.) The Louisiana court also determined that "at the time when the tortious conduct occurred, a legal liability or obligation was created in the husband, in solido with the other joint tortfeasor, to repair the wife's damage caused through their concurring fault." (247 La. 695, 706, 174 So. 2d 122, 126.) Louisiana, therefore, looks to whether a cause of action exists, not whether it may be enforced.

Cases in other jurisdictions cited by the third-party defendant in his brief, *Shonka v. Campbell* (1967), 260 Iowa 1178, 152 N.W.2d 242, and *Ackerson v. Kibler* (1931), 138 Misc. 695, 246 N.Y.S. 580, and others dis-

covered in our research which have disallowed an action for contribution from a spouse or someone else immune from direct suit, are generally founded upon the principle that the right to contribution is dependent upon the injured party having a cause of action against the person from whom contribution is sought. As such, the right of contribution is a derivative right and not a new cause of action. (*Ennis v. Donovan* (1960), 222 Md. 536, 161 A.2d 698.) Since Illinois now has by statute established interspousal tort immunity and contribution among joint tortfeasors, our resolution of the issue before us must be determined by an interpretation of these statutes and the recent rulings of our supreme court in *Allstate Insurance Co. v. Elkins* (1979), 77 Ill. 2d 384, 396 N.E.2d 528, *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, and *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *modified* (1978), 70 Ill. 2d 16.

The recent trend in Illinois has been to curtail common law tort doctrines to allow contribution among joint tortfeasors (Ill. Rev. Stat. 1979, ch. 70, par. 302(a); *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *modified* (1978), 70 Ill. 2d 16) and comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886). One commentator has noted that perhaps the Illinois contribution statute (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)) abolishes the traditional notion of common law tort immunities. (Comment, *Comparative Contribution: The Legislative Enactment of the* Skinner *Doctrine*, 14 J. Mar. L. Rev. 173, 194 (1980).) In a parallel situation the *Skinner* decision balanced policy considerations which immunize an employer from direct suit by an employee with policy considerations which make people who cause an injury responsible for their degree of culpability and allowed contribution from an employer. (70 Ill. 2d 1, 15-16, 374 N.E.2d 437.) In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, the Illinois Supreme Court abolished the long used rule of contributory negligence in favor of "pure" comparative negligence on the basis that the "pure" form of comparative negligence "is the only system which truly apportions damages according to the relative fault of the parties and, thus, achieves total justice." (85 Ill. 2d 1, 27, 421 N.E.2d 886.) Both the Illinois Supreme Court in deciding the *Skinner* and *Alvis* cases and the legislature in enacting a statute on contribution (Ill. Rev. Stat. 1979, ch. 70, par. 302(a)) have found a pressing need to act against the harsh results inherent in both contributory negligence and in a no-contribution rule. For us to allow a loophole to contribution would mar our promising new contribution and comparative negligence schemes as well as detract from an equitable development of these doctrines.

The Illinois statute in relation to contribution among joint tortfeasors (Ill. Rev. Stat. 1979, ch. 70, pars. 301-305) is generally patterned after the

Uniform Contribution Among Tortfeasors Act (12 Uniform Laws Annotated (1975)). The Uniform Act is broadly worded so that each jurisdiction may determine whether to apply common law immunities. (See Uniform Contribution Among Tortfeasors Act (12 Uniform Laws Annotated §1, Commissioner's Comment, at 64 and 77 n.18 (1975)).) It provides "* * * where two or more persons become jointly or severally liable * * *"; whereas, in comparison, the Illinois Act provides "* * * where two or more persons are subject to liability * * *." We can perceive no clear legislative intent in the words of the Illinois act to indicate that interspousal tort immunity was meant to bar contribution from a negligent spouse. Had this been intended, specific language could have been inserted, such as has been done by the legislature in Tennessee, which added the words:

> "* * * but no right of contribution shall exist where, by virtue of intra family immunity, immunity under the workers' compensation laws of the State of Tennessee, or like immunity, a claimant is barred from maintaining a tort action for injury or wrongful death against the party from whom contribution is sought * * *." (Tenn. Code Ann. §29—11—102 (1980).)

Comment on the history for the Illinois act indicates that any common law or statutory immunity should not apply:

> " 'It is the further intent of the committee that the right of contribution thus created be recognized as founded upon the doctrine of unjust enrichment. The right is a separate right of restitution. It is not a derivative right and thus *is not barred by any common law or statutory immunity which would preclude the prime claimant from pursuing an action directly against the party from whom contribution is sought.*' " (Emphasis added.) (Comment, *Comparative Contribution: The Legislative Enactment of the* Skinner *Doctrine*, 14 J. Mar. L. Rev. 173, 193 (1980) quoting legislative history behind Senate Bill 308, published by the Chicago Bar Association's Civil Practice Committee, at 2.)

Thus, the conclusion which can be drawn is that an immunity which one tortfeasor may use as a defense in an action by the plaintiff is not a bar to an action by a joint tortfeasor for contribution. (See Comment, *Comparative Contribution: The Legislative Enactment of the* Skinner *Doctrine*, 14 J. Mar. L. Rev. 173, 194 (1980).) In our view the import of our interspousal tort immunity statute is to provide a procedural bar only to direct suits between spouses, rather than to preclude the substantive cause of action between spouses. (See *Zarrella v. Miller* (1966), 100 R.I. 545, 217 A.2d 673.) Thus, the cause of action exists, but it cannot be enforced. Accordingly, where the bar is removed, *i.e.*, where the suit is not a direct action between spouses, then contribution may be sought from a tort-

feasor spouse, who may otherwise be liable to the plaintiff spouse, but is immune from direct suit. This interpretation is consistent with the decisions in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *modified* (1978), 70 Ill. 2d 16, and *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, which sought to apportion damages for tort injuries as equally as possible among those who were liable.

In view of the trend in other jurisdictions and the views set out by the Illinois Supreme Court in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *modified* (1978), 70 Ill. 2d 16, and *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, for an equitable distribution of fault in negligence suits, we believe equity requires that contribution be allowed even where our statute provides for interspousal tort immunity which would bar a direct suit by the plaintiff. Such a rule is consistent with the desirable policy of the equitable distribution of loss among those parties responsible. The order of the trial court denying the third-party defendant's motion to dismiss and allowing the contribution action is hereby affirmed.

Affirmed.

NASH and LINDBERG, JJ., concur.