ROBERT W. PIPES, Plaintiff, v. AMERICAN LOGGING TOOL CORPORATION, Defendant and Third-Party Plaintiff-Appellant—(Jerry Nelson, Third-Party Defendant-Appellant).

Fifth District   No. 5—84—0709

Opinion filed December 20, 1985.

James P. Leonard, of Thompson & Mitchell, of Belleville, for appellant.

James E. Gorman, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Robert Pipes, brought an action against American Logging Tool Corporation (American) for injuries he suffered as a result of the use of an allegedly defective load binder manufactured and distributed by American. A contribution claim was brought by American against John Entwistle and appellant Jerry Nelson. The case proceeded to trial. At the close of the evidence but before the case was submitted to a jury, American settled with the plaintiff for $1.3 million. The contribution claim against Entwistle and Nelson was decided by the jury, who found in favor of Entwistle but assessed appellant Nelson's fault at 10%. Nelson appeals from a judgment against him for $130,000.

The evidence adduced at trial showed that Pipes was injured in the court of his employment with Clyde Dial Construction Company (also a third-party defendant who was granted a directed verdict).

Nelson and Entwistle, both employed by Nelson's construction company, were working in the Clyde Dial yard at the time of the accident. They were loading a gasoline storage tank onto a lowboy truck, utilizing American's load binder, along with an attached "cheater pipe," to secure the tank. During the loading operation, Pipes helped Nelson and Entwistle in locking down the load binder. Somehow, the handle was released and the pipe struck Pipes in the face, resulting in injuries causing total blindness.

Pipes charged American with negligence and strict liability. American's third-party complaint alleged negligence on the part of Entwistle, Nelson, and Pipes' employer, specifically averring that Nelson and Entwistle committed various negligent acts in using the load binder, including failing to secure the attached pipe and exerting excessive force on the load binder in their loading operation. Nelson and Entwistle denied any negligence and filed several affirmative defenses, two of which form the basis of this appeal.

First, the third-party defendants claimed that American marketed an unreasonably dangerous product and was therefore strictly and solely liable for injuries resulting from its use, and second, the defendants alleged that American's misconduct was wilful and wanton. In response to special interrogatories submitted by the defendants, which addressed each of these defenses, the jury found affirmatively on both issues. Nelson argues on appeal that the finding against American on the affirmative defenses destroys its right to contribution.

The Contribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 301) provides that "where 2 or more persons are subject to liability in tort arising out of the same injury *** there is a right of contribution among them ***." Nelson's brief characterizes the contribution provision as a codification of the principles set forth in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, and urges that his position be analyzed and decided in accordance with the policies advanced in the decision.

In sanctioning a right of contribution, the court in *Skinner* recognized that an employer's misuse of a product or his assumption of the risk of using the product should afford the manufacturer a right to contribution based on the relative degree to which the product and the misuse or assumption contributed to cause the injuries sustained. Appellant would persuade us that the court's ruling in *Skinner* bars American from asserting that merely negligent acts can form the basis for its contribution claim.

To reinforce his argument, Nelson has cited *Coney v. J.L.G. In-*

*dustries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197, and *Simpson v. General Motors Corp.* (1983), 118 Ill. App. 3d 479, 455 N.E.2d 137, *aff'd* (1985), 108 Ill. 2d 146, 483 N.E.2d 1.) Neither case addressed the rule of contribution, but both analyzed and ruled upon the type of conduct on the part of a plaintiff which could be compared to reduce the damages of a manufacturer in a strict products liability action. The analyses contained in those cases are advanced here as helpful to our disposition of the issues before us.

In *Coney*, the court's resolution of whether comparative fault principles should apply to reduce recovery in a products liability action was based upon the same equitable concerns articulated in *Skinner*. In each instance, the supreme court firmly stated that if the misconduct of a plaintiff is a causative factor of the injury sustained, then his or her damages should be reduced proportionately.

In *Simpson*, the court affirmed the reduction of a damage award when the jury found that the plaintiff's decedent had assumed the risk of using defendant's defective earth scraper, and apportioned decedent's fault at 5%. Citing *Coney*, the court rejected defendant's argument that the finding that the decedent had assumed the risk required that judgment be entered in favor of the defendant, and the defendant's argument that comparative negligence, in addition to misuse and assumption of risk, with the exception of inadvertent failure to discover a defect, should also apply to reduce plaintiff's damages. The appellate court's decision was recently affirmed (*Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 483 N.E.2d 1), when the supreme court held that ordinary contributory negligence of a plaintiff should not be considered in applying the doctrine of comparative fault.

The policies advanced in the cited cases simply do not support Nelson's argument. Here, American claimed that Nelson and Entwistle:

(a) failed to use reasonable care in the operation of the load binder;

(b) failed to properly secure the pipe to the handle of the load binder;

(c) failed to keep proper lookout for persons around or near the area when using the load binder with an extension pipe;

(d) failed to warn plaintiff of the danger in using the extension pipe with the load binder;

(e) operated the load binder so as to allow the pipe to slip off the load binder;

(f) exerted excessive force on the load binder when they ap-

plied full effort to the extension pipe;

(g) permitted excessive force on the load binder by allowing Pipes to add his weight and effort to the load binder;

(h) exerted force on the extension pipe without making certain that the pipe was on the handle as far as it could go.

It is true that those allegations which charged the third-party defendants with lack of due care or failure to warn or guard against a defect in the load binder have been judicially rejected as factors for comparison in damage reduction. (*Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 483 N.E.2d 1; see also *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.) Appellant characterizes all of the averments in American's complaint as charges of mere negligence, and insists that the allegations cannot support a claim for contribution. Our reading of the averments, however, convinces us that a number of the allegations describe conduct that amounts to misuse of the load binder.

In any event, even if the allegations of wrongful conduct are properly characterized as negligent conduct, as distinguished from misuse or assumption of the risk, as those concepts had been defined by the supreme court in *Williams* and recently applied in *Simpson*, we believe that the doctrines of contribution and comparative fault must be viewed in distinction from one another. The policy considerations which are reviewed in applying comparative fault principles between an injured plaintiff and a defendant whose liability is premised on strict liability rules are not the same as those embodied in the Contribution Act, which allows contribution based on fault, however defined, among those whose conduct contributed to cause the injury. Furthermore, the Contribution Act may well be broader than the holding in *Skinner*, which was principally concerned with the abolition of the common law rule prohibiting contribution between joint tortfeasors. As the dissents in *Skinner* suggested, problems in the application of contribution remained which the legislature may have intended to obviate by basing the right to contribution on contributory fault in its broadest sense. (See Widland, *Contribution: The End to Active-Passive Indemnity,* 69 Ill. B.J. 78 (1980).) We hold, therefore, that American had a right to seek contribution from Nelson based on his relative fault in his use of the load binder.

As argued by American, the plain wording of the Contribution Act accords with our disposition. Section 3 of the act provides that "the pro-rata share of each tort-feasor shall be determined *in accordance with his relative culpability.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 70, par. 303.) The action taken by the legislature in adopting

the doctrine of contribution following *Skinner* demonstrates that the law is to be viewed as affording litigants the opportunity to place the loss, in proportionate amounts, on those whose actions have proximately caused injury to person or property without regard to traditional labels characterizing the kind of fault involved. Proportionate fault and relative culpability are the operative concepts, regardless of the labels used when the parties are charged. The jury in the instant case determined Nelson's culpability and charged him with 10% of the burden. To reject their verdict undermines the function of the judicial system and vitiates the goal of placing the burden of loss on those whose conduct caused it.

In holding as we do, we necessarily reject Nelson's contention that the special findings of the jury were inconsistent with the general verdict. The Civil Practice Law allows for the submission of special interrogatories on material questions of fact to the jury, and provides that when the special finding is inconsistent with the general verdict, the former is controlling. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1108.) A general verdict and a special finding will not be found inconsistent unless they are clearly and absolutely irreconcilable. *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 1072, 448 N.E.2d 188, 194.

■ In the present case, the jury found that the load binder was in an unreasonably dangerous condition when it left American's control. This finding merely confirms a necessary element of proof in the products liability claim and is not at odds with a separate conclusion that Nelson's conduct contributed to the injuries sustained. And, because we have upheld American's right to obtain contribution from appellant, we believe that judgment was properly entered on the general verdict.

■ The other special finding may present a more complex problem. Appellant asserts that the public policy of this State which discourages wilful and wanton misconduct would be compromised if a contribution claim is allowed to one whom the jury found was guilty of wilful and wanton acts. We are aware of certain decisions which suggest that, at least as a general rule, a party should be prevented from shifting its loss to another when his or her behavior is reckless or intentional. (See, *e.g., Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881; *Beaver v. Country Mutual Insurance Co.* (1981), 95 Ill. App. 3d 1122, 420 N.E.2d 1058.) The instant circumstances differ from those cases in that American is not attempting to shift its burden of loss, but rather is seeking a contribution from one whose conduct also caused the damages incurred. We do not believe that the jury's verdict assessing a 10% contribution in Ameri-

can's favor is irreconcilable with a finding of wilful and wanton conduct.

For all of the reasons stated, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KASSERMAN, P.J., and JONES, J., concur.