GEORGE MARTIN, Plaintiff, v. LION UNIFORM COMPANY *et al.*, Defendants (Lion Uniform Company, Third–Party Plaintiff-Appellee; The City of Chicago *et al.*, Third–Party Defendants-Appellants; Krasny & Company, Inc., Third–Party Plaintiff-Appellee).

First District (3rd Division) No. 1—88—0037

Opinion filed February 1, 1989.—Rehearing denied April 17, 1989.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and L. Anita Richardson, Assistant Corporation Counsel, of counsel), for appellants.

Rooks, Pitts & Poust, of Chicago (Ian M. Sherman and Clifford E. Berman, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff George H. Martin, a Chicago fireman, filed an action seeking damages for personal injuries suffered as a result of fighting a fire. Plaintiff alleged negligence as to defendant Krasny & Company, Inc., which owned and managed the building, and alleged strict products liability and negligence as to defendant Lion Uniform Company, which designed, manufactured and sold the protective clothing which plaintiff wore. (Defendants Kane Uniform Company and Janesville Apparel Company are not parties to this appeal.) Lion and Krasny filed third-party complaints for contribution against third-party defendants, the City of Chicago and the Chicago fire department. The trial court denied the city's motion to dismiss and found that the city was not immune from an action for contribution. On its own motion, the trial court certified the following question of law: "May a contribution action pursuant to the Illinois Contribution Act be maintained against a local public entity where provisions of the Local Governmental and Governmental Employees Tort Immunity Act may bar a direct action against the local public entity?" The city's application for leave to appeal was granted pursuant to Supreme Court Rule 308(a) (107 Ill. 2d R. 308(a)).

We are concerned here with the third-party action filed on March 1, 1984, by Lion Uniform and the third-party action filed on October 18, 1985, by Krasny, seeking contribution under section 2(a) of the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, par. 302(a)) in the event they should be held liable to plaintiff. The contribution action alleged that in its undertaking to provide fire services, the city failed to exercise ordinary care to plaintiff in several material respects. The city moved to dismiss the amended third-party complaints, asserting nonliability under section 2—201 (public employees are not liable for injuries arising from discretionary decisions regarding the training and equipping of fire fighters), and sections 5—102 and 5—103 (governmental entities are not liable for injuries occurring in providing fire fighting services or in maintaining and operating fire fighting equipment) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—201, 5—102, 5—103).

On October 1, 1987, the trial court denied the city's motion to dismiss. The court relied on *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382 (State employee's direct action against the State/employer barred by Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*); however, defendant may bring third-party negligence action for contribution against the State/employer), and

*Stephens v. McBride* (1983), 97 Ill. 2d 515, 455 N.E.2d 54 (plaintiff's direct action against city barred after he failed to give statutory notice of claim to city; however, plaintiff's failure to comply with notice requirement does not bar defendant from bringing contribution action against city). The court concluded that the city's immunity from a direct suit by plaintiff did not extend to immunity from contribution actions.

The issue before us is whether a municipality which might contribute to an individual's injuries related to fire protection services is thereby "liable in tort" for purposes of an action for contribution brought by the defendant in a suit filed by the injured individual. Defendants seek contribution from the city under the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, pars. 301 through 305). A right of contribution may exist if the State is "subject to liability in tort" in this action. Ill. Rev. Stat. 1985, ch. 70, par. 302(a).

Defendants initially point to language indicating that the intent of the Contribution Act is "to reach anyone who is culpable regardless of whether they have been immunized from a direct tort action by some special defense or privilege." (*Doyle v. Rhodes,* 101 Ill. 2d at 9.) This court has previously explained, in distinguishing cases relying on this broad statement, that where contribution is sought from the State, different considerations arise. *Stephens v. Cozadd* (1987), 159 Ill. App. 3d 452, 512 N.E.2d 812; *Welch v. Stocks* (1987), 152 Ill. App. 3d 1, 503 N.E.2d 1079.

■ It has long been established in Illinois that a municipality owes no duty under the common law to any individual for failure to provide a governmental service such as fire protection. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515.) Similarly, the municipality is relieved of liability for injuries to persons resulting from the negligence of officers or employees connected with the maintenance and operation of its fire department. *Roumbos v. City of Chicago* (1928), 332 Ill. 70, 163 N.E. 361, citing *Wilcox v. City of Chicago* (1883), 107 Ill. 334. See also *Stubblefield v. City of Chicago* (1971), 48 Ill. 2d 267, 269 N.E.2d 504 (city immune from liability where bystander injured when struck by firehose after fireman lost control of hose while fighting fire).

The Illinois rule of nonliability follows the general rule in most jurisdictions that a municipality usually cannot be held liable in damages for negligence in connection with fire fighting. (18 E. McQuillin, The Law of Municipal Corporations §§53.52, 53.82 (3d ed. 1984).)

"Thus, in those jurisdictions where the doctrine of governmental immunity was held applicable, the courts have been practically uniform in holding that the governmental entity was immune from liability for injury or damage resulting from negligent acts of omission or commission in connection with the maintenance and operation of a fire department." (57 Am. Jur. 2d *Municipal Tort Liability* §265, at 228 (1971), citing *Roumbos v. City of Chicago* (1928), 332 Ill. 70.) The rule of nonliability rests upon the reasoning that the power conferred upon the municipality to establish a department for the protection of the property of its citizens from fire is of a public or governmental nature. 18 E. McQuillin, The Law of Municipal Corporations §53.82, at 479 (3d ed. 1984); 57 Am. Jur. 2d *Municipal Tort Liability* §§265, 266 (1971) (listing numerous other public policy reasons supporting this rule).

In Illinois, the sound public policy underlying the nonliability rule relates to the tremendous burden which the municipality would bear.

> " 'If liable for neglect in this case the city must be held liable for every neglect of that [fire] department, and every employee connected with it when acting within the line of duty. It would subject the city to the opinions of witnesses and jurors whether sufficient dispatch was used in reaching the fire after the alarm was given; whether the employees had used the requisite skill for its extinguishment; whether a sufficient force had been provided to secure safety; whether the city had provided proper engines and other appliances to answer the demands of the hazards of fire in the city; and many other things might be named that would form the subject of legal controversy. To permit recoveries to be had for all such and other acts would virtually render the city an insurer of every person's property within the limits of its jurisdiction. It would assuredly become too burthensome to be borne by the people of any large city, where loss by fire is annually counted by the hundreds of thousands, if not by the millions. *** To allow recoveries for the negligence of the fire department would almost certainly subject property holders to as great, if not greater, burthens than are suffered from the damages from fire. Sound public policy would forbid it, if it was not prohibited by authority.' " *Roumbos v. City of Chicago,* 332 Ill. at 81, quoting *Wilcox v. City of Chicago,* 107 Ill. at 339-40.

Significantly, this common law rule of nonliability may only be altered by statute. (See generally 57 Am. Jur. 2d *Municipal Tort Liability* §60 (1971).) In the area of fire fighting services, except for

"negligence by reason of the condition of a motor vehicle while it is traveling on public ways" (Ill. Rev. Stat. 1985, ch. 85, par. 5—103(a)), the Illinois legislature has *not* created a new duty in derogation of the common law. Quite the contrary, the common law rule of no duty and the resulting nonliability of a municipality for failing to, or negligently, providing fire protection service was codified in Illinois. (Ill. Rev. Stat. 1985, ch. 85, pars. 5—101 through 5—104.) This was done as part of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), which also reinstated certain common law sovereign immunity defenses (see, *e.g.,* Ill. Rev. Stat. 1985, ch. 85, par. 2—111) following the abrogation of sovereign immunity in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, *cert. denied* (1960), 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955.

■ The statute provides, consistent with the original rationale for the common law rule of no duty/no liability quoted above, that the local public entity is not liable for failure to provide fire protection service; failure to suppress a fire; failure to maintain sufficient personnel, equipment or fire protection facilities; or for any condition of fire protection or fire fighting equipment or facilities. Ill. Rev. Stat. 1985, ch. 85, pars. 5—101, 5—103.

We conclude that in the absence of either a statutory or common law duty, the city and its fire department cannot be "liable in tort" under the Contribution Act. (For similar reasoning, see *Hopkins v. Powers* (1986), 113 Ill. 2d 206, 497 N.E.2d 757, where the court held that liability imposed on dramshops was not grounded in tort, and was exclusive, *sui generis* nontort liability, and thus the defendant dramshop could not be "liable in tort" for purposes of the Contribution Act. See also *Jodelis v. Harris* (1987), 118 Ill. 2d 482, 517 N.E.2d 1055 (dramshop is simply not "subject to liability").) In regard to injuries resulting from the alleged negligent provision of fire protection services, a municipality is not subject to liability within the meaning of the Contribution Act.

Krasny maintains that the city asserted an affirmative defense of sovereign immunity when it filed a section 2—619 motion to dismiss and thereby acknowledged the existence of a duty in tort. (Ill. Rev. Stat. 1985, ch. 110, par. 2—619.) Moreover, he argues that if the nonliability rule is nothing more than an affirmative defense, the determination of whether the rule bars a suit in contribution is governed by *Doyle v. Rhodes,* where the court held that the employer was "subject to liability" in tort under the Contribution Act, although liability could later be defeated by assertion of the affirmative defense provided by

the Workers' Compensation Act. Krasny reasons that because sovereign immunity is considered an affirmative defense, under the holding in *Doyle v. Rhodes* the third-party city here would be "subject to liability in tort," and subject to a contribution action, although the affirmative defense of sovereign immunity could later be successfully asserted against third-party plaintiffs. The city counters that sovereign immunity plays no role in the present case because no duty ever arises. The city asserts that, while the no duty/no liability rule may function as an affirmative defense, it does not create a duty which is otherwise absent both at common law and in Illinois statutes.

■■ ■ The issue of a governmental entity's "immunity and the issue of liability are two complete and distinct issues." (57 Am. Jur. 2d *Municipal Tort Liability* §54 (1971).) Significantly, the common law rule of no duty, as codified, remains in force even where sovereign immunity has been abolished. (See *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214.) The absence of this duty persists, wholly "[i]ndependent of [either] statutory or common-law concepts of sovereign immunity." (*Huey v. Town of Cicero*, 41 Ill. 2d at 363. See also *Motyka v. City of Amsterdam* (1965), 15 N.Y.2d 134, 204 N.E.2d 635, 256 N.Y.S.2d 595 (independent of sovereign immunity, no duty arises, even after abolition of governmental immunity, for failing to supply or negligently supplying fire protection services). Compare *Hartigan v. Beery* (1984), 128 Ill. App. 3d 195, 470 N.E.2d 571 (parent-child immunity is not based on absence of *duty*, but rather upon judicially created immunity from suit).) "Independent of sovereign immunity, a municipality is not liable for failure to supply general fire protection. Indeed, a municipality is not constitutionally required to provide adequate fire protection even where the municipality has undertaken such service." (18 E. McQuillin, The Law of Municipal Corporations §53.53 (3d ed. 1984).) Tort immunity statutes simply *continue* the rule of nonliability. 18 E. McQuillin, The Law of Municipal Corporations §53.52 (Supp. 1987).

Thus, under the no duty/no liability rule, a duty never arises. The judicial abrogation of sovereign immunity merely abrogated a defense to any preexisting duty. (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89.) There was no preexisting duty here. Neither *Molitor* nor any waiver of immunity creates new tort duties and liabilities. (See generally 57 Am. Jur. 2d *Municipal Tort Liability* §72 (1971); see also *Trianon Park Condominium Association, Inc. v. City of Hialeah* (Fla. 1985), 468 So. 2d 912.) Under the inapplicable concept of sovereign immunity, despite any "apparent duty," the governmental entity is immune from tort li-

ability. This does not occur from a denial of the tort's existence, but rather because the existing liability in tort is disallowed. In contrast, here the tort liability or duty never existed. See, *e.g., J & B Development Co. v. King County* (1983), 100 Wash. 2d 299, 303, 669 P.2d 468, 471 (comparing public duty doctrine and sovereign immunity), citing W. Prosser, Torts §131 (4th ed. 1971) and comparing 18 E. McQuillin, Municipal Corporations §53.04b, at 127 (3d ed. 1977), *overruled on other grounds Taylor v. Stevens County* (1988), 111 Wash. 2d 159, 759 P.2d 447 (still finding that no governmental duty existed). See also *Fessler v. R.E.J. Inc.* (1987), 161 Ill. App. 3d 290, 514 N.E.2d 515; *Trianon Park Condominium Association, Inc. v. City of Hialeah* (Fla. 1985), 468 So. 2d 912 (no tort liability because there has never been a common law duty of care with respect to governmental functions, including discretionary authority given fire protection agencies to suppress fires, and statutory waiver of sovereign immunity did not create new duties of care).

As sovereign, the governmental entity undertakes many activities as an obligation to its citizens. It performs functions which an individual could not or would not undertake. We will not hold the sovereign liable for the consequences of performance of fire fighting functions in the matter before us. A contrary holding would subject every fire department in the State to potential liability for each and every action it took in relation to fire protection services. This in turn would lead to hesitation on the part of the government to undertake and perform these essential duties. See *Orzechowski v. State* (R.I. 1984), 485 A.2d 545 (regarding State responsibility for parolees).

Moreover, the Contribution Act applies generally to claims for contribution, while the Tort Immunity Act deals specifically with litigation against the State. Where a court must construe a specific statutory provision and a general statutory provision in either the same or another act which relates to the same subject, the specific provision controls over the general statute. *Welch v. Stocks* (1987), 152 Ill. App. 3d 1, 50 N.E.2d 1079.

We rely on the holding in *Stephens v. Cozadd* (1987), 159 Ill. App. 3d 452, 512 N.E.2d 812, where this court held that the public officials' immunity doctrine barred a contribution action against a flagman on a State highway crew. The immunity remained in effect, even in the third-party action for contribution from the State, due to key public policy considerations. We distinguished the cases permitting contribution involving interspousal or parent-child immunity on the basis that the relationships sought to be protected by the immunity were not affected by the third-party suit to any extent greater than that already

allowed by law. (See *Hartigan v. Beery* (1984), 128 Ill. App. 3d 195, 470 N.E.2d 571.) In *Moon v. Thompson* (1984), 127 Ill. App. 3d 657, 469 N.E.2d 365, this court held that the Contribution Act prevailed against a competing principle of parent-child tort immunity because the public policy considerations which necessitated the protection of the family unit would not be sacrificed where the complaint alleged the parent third-party defendant violated a specific statute pertaining to negligent supervision of his child, a duty imposed for the safety of both the child and the general public. Thus, the third-party action would not "violate the private confines of the family unit in any manner other than that already condoned and prescribed by the legislature" in the negligent parental supervision statute. (*Moon v. Thompson*, 127 Ill. App. 3d at 661; see also *Hartigan v. Beery* (1984), 128 Ill. App. 3d 195, 470 N.E.2d 571 (parent-child immunity does not bar third-party action).) In *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236, the interspousal tort immunity doctrine was viewed only as a procedural bar to any direct suits between spouses, and where the bar was removed, *i.e.*, the suit was not a direct action between spouses, then contribution could be sought.

In contrast, in the present case, the no duty/no liability rule for fire protection services is more than a mere procedural device barring direct suits between firemen and the municipality. The rule bars *any* party from bringing an action, not merely the plaintiff fireman. Moreover, the public policy considerations supporting the nonliability rule would be violated by either the prohibited direct action by plaintiff, or by the proposed third-party action against the governmental entity. No statutory provision demands the State insure the safety of the general public from fire-related injuries. (See *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Moon v. Thompson* (1984), 127 Ill. App. 3d 657, 469 N.E.2d 365.) Thus, in cases involving governmental nonliability, the purpose of protecting public officials from personal liability exists regardless of who brings the direct or contribution action. "If third-party actions were allowed, public officials would be unable to exercise their best judgments without fear of being held personally liable and suffering devastating economic losses, and *** it would be impossible to find responsible employees willing to serve under such conditions." *Stephens v. Cozadd,* 159 Ill. App. 3d at 458.

Under Illinois law, if the government is named as a third-party defendant, the nonliability of the government applies to both the plaintiff fireman and the government. The plaintiff and the third-party plaintiff are interchangeable for purposes of deciding whether or not public policy permits the direct or third-party actions. The non-

liability rule applicable here was designed as a bar to all liability, not just liability to certain members of the general public, whether liability is sought to be imposed through a direct action or a third-party action. See *Stephens v. Cozadd* (1987), 159 Ill. App. 3d 452, 512 N.E.2d 812.

While there is a trend in Illinois to permit third-party actions for contribution in the face of common law or statutory bars to direct actions, we find strong public policy considerations mandate a different result in this case. See *Hartigan v. Beery* (1984), 128 Ill. App. 3d 195, 470 N.E.2d 571.

■■ Krasny contends that the Tort Immunity Act does not apply to fire fighters because they are entitled to recover compensation under the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 6—101 *et seq.*) and Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, pars. 138.1(b)(1), 138.8(c) (narrow coverage if fire fighter is in large city and claim is for permanent and serious disfigurement)). In regard to the Pension Code, section 22—307 refers to common law actions for injuries sustained in the course of the employment, but *not* while fighting a fire. See *O'Donnell v. City of Chicago* (1984), 126 Ill. App. 3d 548, 467 N.E.2d 971; *Sweeney v. City of Chicago* (1971), 131 Ill. App. 2d 537, 266 N.E.2d 689.

In regard to the Workers' Compensation Act, Krasny urges that the case is "on all fours" with *Doyle v. Rhodes*. We disagree. The Workers' Compensation Act creates a statutory no-fault system of compensation. At common law, employers were subject to liability in tort to employees. But for the Workers' Compensation Act, employers would still be subject to such liability. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) Thus, the Act replaces the common law system of rights and remedies in this area. Here, the employer never had a common law duty of due care to its fire fighting employees.

In addition, the rule of nonliability remains the same even where it is a fireman who seeks damages. The no duty/no liability rule applies to bar an action against a governmental entity whether or not the plaintiff is an employee. (See, *e.g.*, *Dallas v. City of St. Louis* (Mo. 1960), 338 S.W.2d 39 (immunity applies whether injured person is employee or member of general public).) The fireman has no cause of action for negligence against the municipal employer for injuries resulting from the performance of fire fighting services. Any statutory compensation for injuries does not alter this. In the absence of statute, a fireman cannot recover damages from the governmental entity for injuries suffered while rendering fire protection services as a

member of the fire department. (18 E. McQuillin, The Law of Municipal Corporations §§53.52, 53.82 (3d ed. 1984).) A similar rule applies to strict liability actions. 18 E. McQuillin, The Law of Municipal Corporations §53.82, at 479 (3d ed. 1984) (also citing rule that municipality is not ordinarily liable to one fireman for injury through the negligence of another fireman).

Furthermore, the entire common law and statutory setting of the Workers' Compensation Act in *Doyle* differs significantly from the setting here involving the nonliability of a municipality. In *Doyle,* the court took special care to describe and highlight very precise factors, none of which are present here. The *Doyle* court was confronted by two earlier employment-related cases. First, the court found that the holding in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849, which permitted a contribution action by a manufacturer against plaintiff's employer, and which was later codified, compelled it to similarly permit a contribution action by the defendant car driver against the employer in *Doyle.* Both employers were shielded from direct suits by their employees under the Workers' Compensation Act. The court found no significant difference between the employers' posture in *Skinner* and *Doyle* to permit an opposite holding. The court was therefore bound to follow the *Skinner* holding and its codified version and recognize that the employer was amenable to suit.

In contrast, here we are faced with no Illinois law permitting a contribution action by a defendant who was sued by a city employee, against the third-party defendant city/employer. Quite the contrary, the common law and statutory "no duty/no liability" rule provides just the opposite.

Second, in *Doyle* the court was faced with, and focused heavily on, *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630, where the court permitted a third-party indemnification action over to the employer. In permitting a contribution action, the *Doyle* court explained it could find "no solution for th[e] anomaly" which would permit an indemnification action over to the employer, but no contribution action over to the employer under the new Contribution Act. No such potentially anomalous situation exists in the municipal corporation area of law relating to nonliability for fire protection services.

In addition, the origin, purpose and structure of the Workers' Compensation Act differs considerably from the no duty/no liability rule at issue here. As explained in *Doyle,* the Workers' Compensation Act gave the employer of an injured worker merely one alternative

defense against the employee. The employer could show either no employment relationship or no nexus between employment and injury, or it could waive its rights under the Act by failing to assert it. "The potential for tort liability exists until the defense is established." (*Doyle,* 101 Ill. 2d at 10-11.) Thus, at the time of injury, the employer is subject to liability in tort to the employee, although its liability can be defeated depending on the response the employer chooses to make to its employee's claim for compensation or damages. Here, at the time of the fireman/plaintiff's injury, the municipality/employer was not subject to liability in tort. Unlike the employer who falls under the Workers' Compensation Act, the municipality has no duty here.

The *Doyle* court pointed out that the employer could compensate the employee for a loss either under the Workers' Compensation Act or through a negligence action. In a tort action, however, the court preferred to use contribution instead of the disproportionate and likely unfair indemnification rule under *DeWitt,* because this would permit the court to focus on the culpability of each party "rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss." (*Doyle,* 101 Ill. 2d at 14.) In contrast, in the present case, the municipality would never compensate the plaintiff employee for a loss connected with fire protection services. Instead of choosing between two "precise legal means by which plaintiff is ultimately able to make" the City compensate him for his loss, permitting a third-party action here would actually create an entirely new cause of action, and impose a previously unknown duty on the city.

Moreover, the *Doyle* court noted the Workers' Compensation Act's provision permitting the employer to recoup any compensation it pays from proceeds of a judgment or settlement paid to the employee by another party. In the present case, no similar legislative provision indicates any contemplation that the municipality would act as a joint tortfeasor under the Contribution Act.

We conclude that the holding in *Doyle* does not require us to permit the third-party action for contribution against the city and its fire department.

Defendants and the trial court also rely on *Stephens v. McBride.* In *Stephens,* the court held that the plaintiff-motorcycle driver's failure to comply with the notice provisions of the Tort Immunity Act, requiring the notification to a local entity within one year of an accident (Ill. Rev. Stat. 1979, ch. 85, par. 8—102), did not prevent the defendant automobile driver's third-party action against a local governmental entity for alleged negligence in failing to remove obstruc-

tions from an intersection. The *Stephens* holding did not create liability where, as a matter of law, none existed. Instead, it merely held that a procedural notice bar would not bar an otherwise proper third-party suit. But for the notice provision, the village in *Stephens* would have been subject to direct liability in tort to plaintiff. Plaintiff's failure to file notice did not affect the village's underlying liability; it simply permitted the village to avoid it.

In contrast, here the city was never under any duty, common law or statutory, to plaintiff or any other person for injuries sustained during the fighting of a fire. Defendants fail to cite any case establishing such a duty. Thus, *Stephens* applies only to the Tort Immunity Act's notice provision which bars the legal effect of a preexisting duty in tort.

In response to the certified question, we find that the common law and statutory rule of nonliability bar the third-party suit for contribution. We reverse the trial court's order denying the city's motion to dismiss and remand for further proceedings consistent with the holdings contained herein.

Judgment reversed and remanded.

FREEMAN, P.J., and WHITE, J., concur.