**Trenna McQUEEN, as Administrator of the Estate of Dennis D. McQueen, Deceased, Plaintiff,**

**v.**

**SHELBY COUNTY, Shelby County Sheriff's Department, Lloyd Spencer, Junior Beck, Doug Storm, Dean Blackerby, Defendants.**

**SHELBY COUNTY, Shelby County Sheriff's Department, Lloyd Spencer, Junior Beck, Doug Storm, Dean Blackerby— Third–Party Plaintiffs,**

**v.**

**COLES COUNTY MENTAL HEALTH CENTER, Susan Anderson, Third–Party Defendants.**

**No. 88–3221.**

United States District Court, C.D. Illinois, Springfield Division.

Feb. 13, 1990.

---

Michael K. Radloff, Mattoon, Ill., for plaintiff.

Charles E. Hervas, Itasca, Ill., for defendants and third-party plaintiffs.

Robert E. Gillespie and Susan Hickman, Springfield, Ill., for third-party defendants.

## OPINION

RICHARD MILLS, District Judge:

A suicide in the Shelby County Jail.

Who may *not* be held liable?

### I—Facts

On August 19, 1988, Trenna McQueen, as Administrator of the estate of Dennis McQueen, filed suit against Shelby County, the Shelby County Sheriff's Department, the Shelby County Sheriff, and three deputy sheriffs alleging violation of Dennis McQueen's constitutional rights and common law negligence.

Plaintiff alleges that Dennis McQueen was arrested by Shelby County deputies and admitted as an inmate at the Shelby County Jail. The Defendants allege in their third party complaint that Dennis McQueen was counseled by a Shelby County Mental Health worker, upon whose advice he was transferred to the Coles County Jail for further psychological evaluation. McQueen was counseled, evaluated, and screened by Coles County Mental Health Center (CCMHC) through its agent, Susan Anderson. Anderson noted that McQueen had no indication of suicidal intent and recommended that he be returned to the general jail population of the Shelby County Jail.

Upon his return to the Shelby County Jail, Dennis McQueen committed suicide by hanging himself.

Following the filing of the complaint by Trenna McQueen against the Shelby County Defendants, the Defendants filed a third party complaint pursuant to the Illinois Contribution Act, Ill.Rev.Stat. ch. 70, ¶ 302, against CCMHC and Anderson (Coles County Defendants). The Shelby County Defendants allege that CCMHC and Anderson are liable for Plaintiff's decedent's suicide by virtue of negligently and carelessly failing to diagnose the continued suicidal intent of McQueen and negligently recommending his return to the general jail population. The Coles County Defendants have moved to dismiss the third party complaint, or in the alternative for summary judgment, on various grounds.

When the parties submit materials outside of a motion to dismiss, the Court has discretion to treat the motion as one for summary judgment. *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386 (7th Cir.1981). Generally, the Court must give notice to the parties that it intends to treat the motion as one for summary judgment and allow them to submit additional materials. In the case at bar the Coles County Defendants have specifically styled their motion as a motion to dismiss or in the alternative for summary judgment and have submitted materials outside their motion. The response of the Shelby County Defendants to the motion indicates that they were aware that the motion was to dismiss or for summary judgment. Therefore, to allow us to consider materials outside the motion, and because the questions raised by the parties are primarily ones of law, we will treat the motion as one for summary judgment under Fed.R.Civ.P. 56(c).

### II—Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14

Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Applying this standard, the Court now turns to the case at bar.

### III—Analysis

The Coles County Defendants raise three arguments in support of their motion for summary judgment. First, they argue that they are immune from suit by virtue of the Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev.Stat. ch. 85, ¶ 1–101 *et seq.* As a corollary to this argument, they also argue that the Shelby County Defendants are immune from suit by virtue of this same act. Second, the Coles County Defendants argue that to the extent that the Shelby County Defendants are found liable to Plaintiff for any intentional or wilful and wanton conduct, Illinois law does not allow such tortfeasors to maintain an action for contribution. Third, the Coles County Defendants argue that the Shelby County Defendants have failed to attach an affidavit to their complaint as required by Ill.Rev.Stat. ch. 110, ¶ 2–622.

**A. Local Governmental Entity Immunity**

The Local Governmental and Governmental Employees Tort Immunity Act provides that local public entities are immune from suit for various acts of negligence. Paragraph 1–206 defines the term "local public entity" and provides that a

local public entity includes a county, township, municipality, municipal corporation, school district, school board, forest preserve district, park district, fire protection district, sanitary district, and all other local governmental bodies. Local public entity also includes library systems and any intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act as well as any not-for-profit corporation organized for the purpose of conducting public business.

Ill.Rev.Stat. ch. 85, ¶ 1–206. The underlined portion was added by Public Act 84– 1431 which became effective on November 25, 1986. The Coles County Defendants

assert, and our independent research has confirmed, that no Illinois court has construed the phrase "any not-for-profit corporation organized for the purpose of conducting public business." All of the cases construing the definition of "local public entity" have involved a specifically enumerated entity. *See Davis v. Chicago Housing Authority*, 176 Ill.App.3d 976, 126 Ill. Dec. 391, 531 N.E.2d 1018 (1st Dist.1988) (municipal corporation); *Durham v. The Forest Preserve District of Cook County*, 152 Ill.App.3d 472, 105 Ill.Dec. 614, 504 N.E.2d 899 (1st Dist.1986) (forest preserve district); *Grady v. Bi–State Development Agency*, 151 Ill.App.3d 748, 104 Ill.Dec. 427, 502 N.E.2d 1087 (5th Dist.1986) (intergovernmental agency); *Landstrom v. Illinois Dep't of Children & Family Serv.*, 699 F.Supp. 1270 (N.D.Ill.1988) (school district).

■ If CCMHC is considered to be a "local public entity" within the meaning of the Tort Immunity Act, then the allegations of the Shelby County Defendants fall clearly within ¶ 6–105 of the act which provides

neither a local public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.

Ill.Rev.Stat. ch. 85, ¶ 6–105. Paragraph 6– 106 of the Tort Immunity Act further provides for immunity for injuries "resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness or addiction or from failing to prescribe for mental or physical illness or addiction." *Id.* ¶ 6–106. Paragraphs 6–107 and 6–109 similarly provide immunity for determining whether to confine a person for mental illness or failing to admit a person to a medical facility operated or maintained by a local public entity. Therefore, if CCMHC is considered to be a "local

public entity" within the meaning of the Tort Immunity Act, it and its employees will be shielded from liability for negligently failing to diagnose the mental problems which led to the suicide death of Plaintiff's decedent.

In support of their argument that they fall within the definition of "local public entity," the Coles County Defendants argue that CCMHC is a non-profit corporation whose articles of incorporation provide that the purpose of the corporation is to

engage exclusively in scientific, literary and educational activities leading to the promotion and conservation of the mental health of the people of the Coles County, Illinois, area; including the study and furnishing of facilities for the prevention and care of nervous, emotional and mental disorders, regardless of race, creed, or color; and to receive, use, hold and apply funds, gifts, requests and endowments or the proceeds thereof, to give effect to and carry out the purposes herein stated.

The Coles County Defendants have also submitted an affidavit from Kathy Roberts, director of CCMHC, stating that over 90% of CCMHC's financing is provided by state and local sources.

The Illinois Supreme Court has stated that "the primary rule of statutory construction is to ascertain and effect the legislature's intent. In doing so, courts first look to the statutory language itself. If the language is clear, the court must give it effect and should not look to extrinsic aids for construction." *In re Marriage of Logston,* 103 Ill.2d 266, 82 Ill.Dec. 633, 469 N.E.2d 167 (1984). The Coles County Defendants argue that the language of the Tort Immunity Act defining "local public entity" as "any not-for-profit corporation organized for the purpose of conducting public business" is clear and unambiguous. The Coles County Defendants assert that CCMHC's articles of incorporation and by-laws clearly bring it within the scope of the definition of "local public entity."

The Shelby County Defendants advance two arguments in response to the Coles County Defendants' assertion that CCMHC falls within the definition of "local public entity." First, the Shelby County Defendants rely on the principle of statutory construction known as *ejusdem generis.* This principle states that "if a series of more than two items ends with a catchall term that is broader than the category into which the preceding items fall but which those items do not exhaust, the catchall term is presumably intended to be no broader than that category." R. Dickerson, *The Interpretation and Application of Statutes* 234 (1975). Illinois courts recognize this principle of statutory construction. *See Kostecki v. Pavlis,* 140 Ill.App.3d 176, 94 Ill.Dec. 645, 488 N.E.2d 644 (1st Dist.1986) (general words to be construed as applying only to things of same general class as those specifically enumerated). The Shelby County Defendants argue that the definition of "local public entity" must be viewed within the context of the act's specific wording of protecting those entities which exhibit the clear indicia of a body politic in terms of creation, delegated powers, and the exercise of those powers.

While the Shelby County Defendants correctly state the principle of *ejusdem generis,* we believe that they misapply it to the instant case. Paragraph 1–206 does not contain a listing of specifically enumerated entities and then end with a general catchall phrase. Rather, we believe that the phrase "any not-for-profit corporation organized for the purpose of conducting public business" is itself a specifically enumerated entity which applies to a particular class of organizations.

Second, Shelby County Defendants urge this Court to distinguish a "true public entity" from a "public purpose entity" by recognizing that a "true public entity" exhibits the characteristics of a body politic. Specifically, the Shelby County Defendants urge us to draw a distinction between those organizations which have the power to tax and those which do not. In support of this argument, the Shelby County Defendants assert that if CCMHC had been organized pursuant to the Hospital District Law, Ill. Rev.Stat. ch. 23, ¶ 1251 *et seq.,* then it would be a municipal corporation with the

**1454**

characteristics of a body politic including the power to tax.

■ We must reject this argument for two reasons. First, nothing within the Tort Immunity Act requires a local public entity to possess the power to levy taxes. If the General Assembly had intended the definition of "local public entity" to turn on the power to levy taxes, they could have simply stated in ¶ 1–206 that a local public entity is a county, township, municipality, municipal corporation, or other body politic with the ability to tax. Instead, the General Assembly chose to specifically enumerate those entities which are to be considered "local public entities" and one such entity is "any not-for-profit corporation organized for the purpose of conducting public business." CCMHC clearly falls within this definition. Second, the Coles County Defendants argue that the Community Mental Health Act, Ill.Rev.Stat. ch. 91½, ¶ 300.1 *et seq.*, allows counties to set up a seven member mental health board which has the power to levy taxes to provide mental health services throughout the area. *Id.* ¶ 304. CCMHC receives approximately 12% of its revenue from this very source.

■ We hold that CCMHC falls within the plain meaning of the definition of "local public entity" and is entitled to the immunity provided by the Tort Immunity Act, specifically ¶ 6–105. All Illinois courts which have considered the issue of whether a third party plaintiff can maintain an action for contribution against a local public entity which is immune from suit have held that such an action cannot lie. *See Lietsch v. Allen,* 173 Ill.App.3d 516, 123 Ill.Dec. 340, 527 N.E.2d 978 (3d Dist.1988); *Martin v. Lion Uniform Co.,* 180 Ill.App.3d 955, 129 Ill.Dec. 686, 536 N.E.2d 736 (1st Dist. 1989); *Stephens v. Cozadd,* 159 Ill.App.3d 452, 111 Ill.Dec. 423, 512 N.E.2d 812 (3d Dist.1987). Therefore, the Shelby County Defendants' action for contribution against CCMHC and Anderson must be dismissed to the extent that they seek to hold the Coles County Defendants liable for any negligent conduct.

**B. Wilful and Wanton Conduct**

■ The Tort Immunity Act also bars any action against Shelby County or its employees for their negligence in failing to adequately diagnose McQueen's mental condition. However, the Tort Immunity Act does not shield a party from liability for their wilful and wanton conduct. The Coles County Defendants argue that, to the extent the Shelby County Defendants are liable to McQueen for their wilful and wanton or intentional conduct, they cannot maintain a contribution action against the Coles County Defendants.

Prior to the Illinois Supreme Court's decision in *Gerill Corp. v. Jack L. Hargrove Builders, Inc.,* 128 Ill.2d 179, 131 Ill.Dec. 155, 538 N.E.2d 530 (1989), there was a split among the Illinois appellate courts as to whether intentional conduct was subject to a right of contribution by a wrongdoer. In *Gerill,* the Illinois Supreme Court held that intentional conduct is not subject to contribution under the Illinois Contribution Among Joint Tortfeasors Act.

The Coles County Defendants argue that this rule of no contribution for intentional tortfeasors will also apply in the situation where the third party plaintiff is held liable for wilful and wanton conduct. Specifically, the Coles County Defendants argue that to the extent that the Shelby County Defendants are found liable to Plaintiff for their wilful and wanton conduct, they will be barred from seeking contribution from the Coles County Defendants. At the present time there is a split of authority among the Illinois appellate courts on this issue. *See Bresland v. Ideal Roller & Graphics Co.,* 150 Ill.App.3d 445, 103 Ill. Dec. 513, 501 N.E.2d 830 (1st Dist.1986) (denying contribution to a third party plaintiff found liable for wilful and wanton conduct); *Pipes v. American Logging Tool Corp.,* 139 Ill.App.3d 269, 93 Ill.Dec. 757, 487 N.E.2d 424 (5th Dist.1985) (allowing contribution for a third party plaintiff found liable for wilful and wanton conduct). The *Bresland* court specifically rejected the holding in *Pipes.*

■ In the absence of a decision by the state's highest court, an intermediate state

court's decision is authoritative, unless there is good reason to believe that the state's highest court would reject the decision of the intermediate court. *McDonald v. Sanduik Process Systems*, 870 F.2d 389, 394 n. 3 (7th Cir.1989). When there are inconsistent decisions between co-equal branches of state intermediate appellate courts, we must apply the rule that we believe the state's highest court would adopt were it to decide the issue.

 In *Bresland,* the court explained that the adoption of the Contribution Act by the Illinois General Assembly has been generally recognized as the legislature's intent to codify the decision in *Skinner v. Reed–Prentice Division Package Machinery Co.,* 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978). In *Skinner,* the Illinois Supreme Court announced that the doctrine of contribution was applicable in Illinois for causes of action arising out of occurrences on and after March 1, 1978. The *Skinner* decision was recognized as applying to third party complaints pleaded in negligence as well as products liability actions alleging strict liability in tort. A great deal of the discussion in *Skinner* centered around the 18th century English case of *Merriweather v. Nixan,* 101 Eng.Rep. 1337 (1799), which formed the basis for the rule against contribution among tortfeasors. The rule of *Merriweather* denying contribution among tortfeasors was limited to wilful or intentional wrongdoers. The *Skinner* majority did not explicitly state whether the no-contribution rule would continue to apply to wilful or intentional wrongdoers. Justice Ward, in dissent, argued that such torts were not within the rationale of the newly announced contribution doctrine and thus the rule barring contribution for wilful or intentional wrongdoers should be retained.

The Contribution Act merely provides that there is a right of contribution among two or more persons who are subject to liability in tort arising out of the same injury. Ill.Rev.Stat. ch. 70, ¶ 302(a). The act does not differentiate among the various types of conduct giving rise to tort

liability. In spite of the act's silence, the Illinois Supreme Court in *Gerill* quoted at length from the Senate and House debates on the Contribution Act and concluded that the General Assembly intended to allow contribution among *negligent* tortfeasors. The *Bresland* court defined wilful and wanton conduct as that which "usually approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." Restatement (Second) of Torts § 886A, comment k. Based on the heightened state of mind requirement for wilful and wanton conduct, the court in *Bresland* held that the public policy of Illinois does not permit one found liable for wilful and wanton misconduct to seek reimbursement under the Contribution Act.

On the other hand, the court in *Pipes* gave very little discussion to the issue of whether Illinois law would recognize a right of contribution for one found liable for wilful and wanton misconduct. The *Pipes* court merely stated that "[t]he instant circumstances differ from those cases [denying contribution] in that [defendant] is not attempting to shift its burden of loss, but rather is seeking a contribution from one whose conduct also caused the damages incurred." *Pipes,* 139 Ill.App.3d at 274, 93 Ill.Dec. at 760, 487 N.E.2d at 428.

We believe that the decision in *Bresland* is the better reasoned opinion and the one that the Illinois Supreme Court would adopt were it to decide this issue today. Therefore, we hold that to the extent the Shelby County Defendants are found liable to Plaintiff for wilful and wanton misconduct they would be barred under the Contribution Act from seeking reimbursement from the Coles County Defendants.

#### C. Certificate Requirement

The final argument raised by the Coles County Defendants is that the Shelby County Defendants failed to attach a certificate to the third party complaint as required by Ill.Rev.Stat. ch. 110, ¶ 2–622, stating that the affiant has consulted with a qualified health care professional in the same field as the Third Party Defendants

**1456**

and that the health care professional has found the action to be reasonable and meritorious. The certificate requirement enunciated in ¶ 2–622 was adopted by the General Assembly as an attempt to cut down on the abuses within medical malpractice litigation. The Shelby County Defendants argue that a certificate is not required in the context of the present case because ¶ 2–622 is expressly directed to medical, hospital, or healing art malpractice and not a mental health worker's acts of counseling, evaluation, or screening. We are not required to reach the issue of the requirement of a certificate because of our prior rulings in this case.

### IV—Conclusion

We hold that CCMHC is a "local public entity" within the definition of the Tort Immunity Act and thus is immune from suit for its negligent conduct. Furthermore, to the extent that Plaintiff's complaint against the Shelby County Defendants seeks recovery for wilful and wanton or intentional misconduct, the Shelby County Defendants do not have a right of contribution under the Contribution Act against the Coles County Defendants.

*Ergo,* Third Party Defendants' motion for summary judgment (d/e 35) is ALLOWED.