PEGGY LOU LIETSCH, Plaintiff, v. AMANDA ALLEN, Defendant and Third–Party Plaintiff-Appellee (The City of Galesburg, Third–Party Defendant-Appellant).

Third District   No. 3—87—0668

Opinion filed August 3, 1988.—Rehearing denied September 21, 1988.

517

SCOTT, J., dissenting.

Murvel Pretorius, Jr., and Mary W. McDade, both of Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria, for appellant.

Burrel Barash, of Barash, Stoerzbach & Henson, and West, Neagle & Williamson, both of Galesburg, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:
This case comes before this court as a permissive interlocutory appeal pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308) and concerns the application of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*) and the Contribution Act (Ill. Rev. Stat. 1985, ch. 70, pars. 301 through 305) to a municipality.
Plaintiff, Peggy Lietsch, a Galesburg police officer, was directing traffic when a vehicle driven by defendant, Amanda Allen, struck and injured her. Amanda allegedly drove the wrong way and entered a closed intersection pursuant to instructions she received from another

police officer. Initially, Peggy sued Amanda for negligence; then Amanda impleaded the City of Galesburg seeking contribution for allegedly:

"(a) Failing to furnish or require the wearing of safety clothing to warn traffic ***

(b) Failing to keep a proper lookout for vehicles approaching from the left ***."

Galesburg defended by claiming it is protected by sections 2—201 (municipality immunity from suit for discretionary/policy determinations), 2—202 (liability only for willful and wanton negligence), and 2—109 (no vicarious municipality liability) of the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—201, 2—202, 2—109), with which Amanda disagreed.

On February 24, 1987, Galesburg answered the amended third-party complaint and asserted affirmative defenses based on the Tort Immunity Act following the denial of its various preanswer motions. On September 18, 1987, the trial court struck Galesburg's affirmative defenses; however, the trial court reconsidered and certified the following issue for appeal on October 1, 1987: "Whether a municipality is precluded from asserting the immunities permitted under the Tort Immunity Act in an action brought under the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, sec. 3—1—305 [*sic*])" (hereinafter the Contribution Act). In other words, is Galesburg immune from contribution under the Tort Immunity Act?

■ The Tort Immunity Act derogates the common law and must be strictly construed. (*Rio v. Edward Hospital* (1984), 104 Ill. 2d 354, 472 N.E.2d 421.) The supreme court held the Tort Immunity Act must be strictly construed against the public entity involved. (*Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 342, 270 N.E.2d 415.) Whenever provisions of the Tort Immunity Act have conflicted with other legislation, the supreme court has carefully considered the history and policies of each. Traditional governmental immunity applies to this discretionary activity in which Galesburg was involved. According to section 2—201 of the Tort Immunity Act, a public official is immune from liability for a "determination of policy or the exercise of discretion." (Ill. Rev. Stat. 1985, ch. 85, par. 2—201.) There is a protection from liability even though the exercise of discretion may have been abused. The Illinois courts have consistently protected public officials (and the employing agency) from liability for such exercise of discretion. Only section 2—202 of the Tort Immunity Act allows imposition of liability for willful and wanton misconduct. Ill. Rev. Stat. 1985, ch. 85, par. 2—202.

■ For example, in *Fustin v. Board of Education of Community Unit District No. 2* (1968), 101 Ill. App. 2d 113, 242 N.E.2d 308, the school district was protected by this immunity for allegedly implementing improper procedures to control a basketball game. In *Fryman v. JMK/Skewer, Inc.* (1985), 137 Ill. App. 3d 611, 484 N.E.2d 909, the county health department was immune from liability for allegedly failing to timely close a restaurant that supposedly served contaminated food. In *Thiele v. Kennedy* (1974), 18 Ill. App. 3d 465, 309 N.E.2d 394, a jail inmate sued the sheriff for willful and wanton misconduct for housing her with allegedly dangerous persons. This court held that section 2—201 barred the action as a matter of law. This court stated:

> "Section 2—201 incorporates in statutory form all or at least a substantial part of existing case law governing employee immunities. The principle is that public officers should not be liable in tort for injuries arising out of the exercise of governmental powers vested in good faith if the powers are discretionary as opposed to ministerial in nature. The principle, known as quasi-judicial immunity, was derived from the immunity enjoyed by judges for actions taken by them in the course of their official duties." *Thiele*, 18 Ill. App. 3d at 467, 309 N.E.2d at 396.

This court continued on to define the scope of section 2—201:

> "This immunity is conditioned upon good faith exercise of discretion and extends only to acts not resulting from corrupt or malicious motives. [Citations.]
>
> We believe that in the instant case, the plaintiff had the burden of alleging and of proving that the acts of the defendant sheriff were from 'corrupt or malicious motives.' " *Thiele*, 18 Ill. App. 3d at 468, 309 N.E.2d at 396.

■ Plaintiff failed to allege the employees of the City of Galesburg were guilty of willful and wanton misconduct with respect to their duties. The trial court should have dismissed or struck that portion of the complaint. If the plaintiff were guilty of negligence, the defendant is entitled to a reduction in the amount of the award assessed against her. To allow the defendant to recover in contribution against the City of Galesburg would in effect allow the amount of the award to be reduced twice, which would be improper.

In *Fitzpatrick v. City of Chicago* (1986), 112 Ill. 2d 211, 492 N.E.2d 1292, the city was immune from liability following the alleged negligence of one of its officers, who parked his police vehicle behind the scene of an accident and activated his emergency lights, when another motorist struck the police car, causing it to strike the plaintiff.

The appellate and supreme court held that he was engaged in executing or enforcing applicable traffic laws. The supreme court noted:

"Thus, where the evidence establishes that at the time of his alleged negligence a public employee was engaged in a course of conduct designed to carry out or put into effect any law, an affirmative defense based upon Sections 2—202 and 2—109 of the Tort Immunity Act [citation] should be available to the governmental employee and his employer." *Fitzpatrick*, 112 Ill. 2d at 221, 492 N.E.2d at 1296.

The defendant contended the Contribution Act superseded the Tort Immunity Act in this instance. We do not so agree.

■ Our courts have consistently held the Tort Immunity Act was designed to protect public employees in the exercise of judgment and discretion. (See *Fryman v. JMK/Skewer, Inc.* (1985), 137 Ill. App. 3d 611, 484 N.E.2d 909; *Stephens v. Cozadd* (1987), 159 Ill. App. 3d 452, 512 N.E.2d 812.) Subsequent to the occurrence of this accident, the legislature codified the case law in this area in the Tort Immunity Act. The trial court should have realized the purposes and effect of the recent statutory enactments were the codification of the well-settled case law. The trial court was incorrect in holding the Contribution Act took precedence over the Tort Immunity Act. The recent enactments provide that a public employee is not liable for the exercise of discretion or implementation of policy. Specifically, section 2—201 is a complete bar to recovery and section 2—202 is a statement of the conditions upon which a public employee is subject to liability in tort.

The Contribution Act was intended to impose liability only upon those who are otherwise subject to liability in tort. (Ill. Rev. Stat. 1985, ch. 70, par. 302.) At issue in this case is when the city can be liable to a wrongdoing third-party plaintiff and defendant upon a wider basis than it could even be liable to an injured plaintiff. The plaintiff could recover from the city if she could prove it was guilty of willful and wanton misconduct while in the execution or enforcement of the law. A nonsensical result is achieved by allowing the plaintiff to recover against a municipality only for willful and wanton misconduct while allowing a wrongdoing codefendant to recover in contribution for simple negligence. See *J. I. Case Co. v. McCartin-McAulliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 516 N.E.2d 260.

*Stephens v. Cozadd* (1987), 159 Ill. App. 3d 452, 512 N.E.2d 812, is on point in this case. In *Stephens,* the interplay of the sovereign immunity of the State of Illinois and the Contribution Act is at issue. The State's sovereign immunity barred a contribution action. This court held in *Stephens* the Contribution Act did not destroy "public

officials' " immunity. It continued:

"Although several courts have determined that the public policy considerations associated with the Contribution Act prevail over various statutory and common law immunities, none of the cases addressed public officials' immunity or the public policy considerations surrounding this particular form of immunity. After a careful evaluation of the doctrine of public officials' immunity and the repercussions which would follow if contribution actions could be maintained against officials immune from direct suits, we find that compelling public policy considerations mandate that the immunity bar actions for contribution.

As previously noted, public officials' immunity is grounded on the belief that officials ought to be shielded from personal liability for decisions made and actions taken in the performance of their employment. If a public official is haunted by the possibility of facing devastating personal liability for each employment decision and action which may inadvertently cause harm to another, employee performance will most certainly be hampered and, indeed, it may be difficult to find individuals willing to serve as public officials." 159 Ill. App. 3d at 457-58.

Section 2—109 of the Tort Immunity Act bars liability against a municipal corporation if the official in question would not be liable. (Ill. Rev. Stat. 1985, ch. 85, par. 2—109.) Therefore, plaintiff's suit for contribution is barred by the Tort Immunity Act.

For the foregoing reasons, the circuit court of Knox County is reversed on the issue of striking defendant's affirmative defense alleging immunity based on the Tort Immunity Act and this case is remanded for further proceedings in accordance with this order.

Reversed and remanded.

HEIPLE, J., concurs.

JUSTICE SCOTT, dissenting:

It is only after a careful review of the authorities cited and a studied consideration of their import that I find I must respectfully dissent from the views of my colleagues. I reach a different conclusion in the case before us not because any decision of our supreme court unequivocally dictates such a course. I believe it is fair to say the court has not directly addressed the issue certified here. Instead, it is from comments which are admittedly *dicta* that I infer authority which persuades me the court would disagree with today's majority if

confronted with the same facts. Therefore, I would hold the Contribution Act supersedes the Tort Immunity Act in this instance.

The Illinois statute in relation to contribution among joint tort-feasors (Ill. Rev. Stat. 1983, ch. 70, pars. 301 through 305) is modeled after the uniform act which itself is broadly worded so that each jurisdiction may determine whether to apply common law immunities. (*Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236.) In making such a determination for Illinois, the supreme court reviewed the legislative history of the Contribution Act and established to its "satisfaction that the intent of the *** statute was to reach anyone who is culpable regardless of whether they have been immunized from a direct tort by some special defense or privilege." (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 9, 461 N.E.2d 382, 386.) While the language of *Doyle* appears broad enough to abolish any defense of immunity in contribution actions, we have continued to utilize a balancing test to determine whether the public policy considerations associated with the Contribution Act prevail over various statutory and common law immunities. *Stephens v. Cozadd* (1987), 159 Ill. App. 3d 452, 512 N.E.2d 812.

It is the *Cozadd* case upon which the majority principally rely. There, in weighing the policies underlying public official's immunity, the panel concluded it would be impossible to find responsible employees willing to serve in public service unless public officials' immunity barred all personal liability, even in actions for contribution. On that basis, it held that public officials' immunity provided a defense to an action for contribution.

In the case at bar, it is not the public employee but rather the governmental entity from whom contribution is sought. *Cozadd* is not persuasive when the personal liability of the public employee is not at issue.

The supreme court has indicated a preference for the policies underlying the Contribution Act. In *Stephens v. McBride* (1983), 97 Ill. 2d 515, 455 N.E.2d 54, the justices held the notice provisions in the Tort Immunity Act were inapplicable to a defendant seeking contribution from a governmental entity covered by the Act. Given the supreme court's sweeping statement in *Doyle* relative to immunities and the express holding in *McBride* finding the policies underlying the Contribution Act should prevail, I would affirm the order of the lower court.