THOMAS BUELL et al., Plaintiffs, v. OAKLAND FIRE PROTECTION DISTRICT BOARD, d/b/a Oakland City Ambulance Service, et al., Defendants (Felda Ingrum, Defendant and Counterplaintiff-Appellee; Oakland Fire Protection District Board, d/b/a Oakland City Ambulance Service, et al., Plaintiffs and Counterdefendants-Appellants).

Fourth District   No. 4—92—0380

Opinion filed December 17, 1992.

Edward M. Wagner, John D. Flodstrom, and Michael R. Robinson, all of Heyl, Royster, Voelker & Allen, of Urbana, for appellants.

Jerrold H. Stocks and Glen A. Featherstun, both of Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiffs Thomas and Beverly Buell filed an action against the Oakland Fire Protection District Board, d/b/a Oakland City Ambu-

lance Service (Oakland), and Felda Ingrum, seeking damages for personal injuries. The pleading alleged that Thomas Buell was a passenger in an ambulance owned by Oakland and operated by Mary Jane Temples that collided with an automobile driven by Ingrum. Ingrum filed a counterclaim against Oakland and its employee, Temples, seeking contribution for any alleged injuries and loss of consortium suffered by plaintiffs. Four of the counts in this counterclaim were based on a theory of wilful and wanton conduct, and four were brought under a negligence theory. Only the negligence counts are at issue here.

■■ On June 4, 1991, Oakland and Temples filed a motion for summary judgment on Ingrum's counterclaim for contribution based upon section 5—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), which provides:

"Except for willful or wanton conduct, neither a local public entity, nor a public employee acting within the scope of his employment, is liable for an injury caused by the negligent operation of a motor vehicle or firefighting or rescue equipment, when responding to an emergency call, including transportation of a person to a medical facility." Ill. Rev. Stat. 1991, ch. 85, par. 5—106.

The trial court denied the motion for summary judgment, citing the existence of a material issue of fact whether the emergency vehicle operator could reasonably conclude that there was a *bona fide* emergency. On March 24, 1992, Oakland and Temples filed a motion for leave to file a first affirmative defense against the four counts alleging negligence. No objection was made to the timeliness of this motion. The proposed affirmative defense asserted that, under the immunity afforded by section 5—106 of the Tort Immunity Act, neither Oakland nor Temples could be held liable for any injury resulting from a claim of negligence. On April 14, 1992, the trial court denied the motion and on April 23, 1992, entered a written order for Rule 308 (134 Ill. 2d R. 308) interlocutory appeal. The trial court identified the following question of law: whether section 5—106 of the Tort Immunity Act may be raised as a defense in an action for contribution brought pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (Ill. Rev. Stat. 1991, ch. 70, par. 301 *et seq.*).

I

■ The Illinois Supreme Court adopted the doctrine of contribution among joint tortfeasors in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437. The

*Skinner* decision was later codified by the legislature in the Contribution Act, which provides:

"[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property, *** there is a right of contribution among them, even though judgment has not been entered against any or all of them." Ill. Rev. Stat. 1991, ch. 70, par. 302(a).

In cases where the law of contribution has clashed with statutory immunities which would defeat a direct action, Illinois courts have balanced the public policy concerns and found, in many cases, that the law of contribution must prevail over a conflicting principle of immunity. (See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382; *Stephens v. McBride* (1983), 97 Ill. 2d 515, 455 N.E.2d 54; *Hartigan v. Beery* (1984), 128 Ill. App. 3d 195, 470 N.E.2d 571.) These same considerations of public policy have, in many cases, led to the opposite conclusion. (See *Stephens v. Cozadd* (1987), 159 Ill. App. 3d 452, 512 N.E.2d 812; *Lietsch v. Allen* (1988), 173 Ill. App. 3d 516, 527 N.E.2d 978; *Martin v. Lion Uniform Co.* (1989), 180 Ill. App. 3d 955, 536 N.E.2d 736.) Under the facts in this case, we find section 5—106 of the Tort Immunity Act defeats Ingrum's right to contribution.

■ At the outset, we note that the Contribution Act has been in effect since 1979. (See Pub. Act 81—601, eff. Sept. 14, 1979 (1979 Ill. Laws 2347).) Unlike other provisions in the Tort Immunity Act, section 5—106 was adopted in 1986. (See Pub. Act 84—1431, §2, eff. Nov. 25, 1986 (1986 Ill. Laws 3740, 3741).) Clearly, the legislature had the option of limiting application of section 5—106 to direct actions, but did not do so. To allow a right of contribution to prevail over the immunities provided in section 5—106 would defeat what appears to be a distinct legislative purpose.

Citing *Doyle*, Ingrum contends that the theory underlying the right of contribution is not so much a recovery for the tort, but the enforcement of an equitable duty to share liability for the wrong done. (*Doyle*, 101 Ill. 2d at 14, 461 N.E.2d at 388.) To accept this argument would expose Oakland to liability from a wrongdoing third-party plaintiff and defendant upon a wider basis than it would be to the injured plaintiff. We find no equitable purpose served by this inconsistency and agree with the *Lietsch* decision, where the court stated:

"A nonsensical result is achieved by allowing the plaintiff to recover against a municipality only for willful and wanton misconduct while allowing a wrongdoing codefendant to recover in

contribution for simple negligence." *Lietsch,* 173 Ill. App. 3d at 520, 527 N.E.2d at 980-81.

## II

Ingrum contends that application of section 5—106 of the Tort Immunity Act as an affirmative defense to a claim for contribution will effect an unconstitutional construction, in violation of the due process guarantees of the Illinois Constitution (Ill. Const. 1970, art. I, §2) and the provisions of the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV). She argues that to allow Oakland to avoid its share of fault is to force her, because of joint and several liability, to pay an obligation of a public enterprise, in violation of the due process guarantees of the Illinois Constitution (Ill. Const. 1970, art. I, §2).

■ Legislative enactments carry a strong presumption of constitutionality, and all doubts must be resolved in favor of their validity. The burden rests upon the challenging party to rebut this presumption. (*Bilyk v. Chicago Transit Authority* (1988), 125 Ill. 2d 230, 235, 531 N.E.2d 1, 2-3.) The test, in determining whether a statute violates due process, is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety, and general welfare. *People v. Burton* (1981), 100 Ill. App. 3d 1021, 1022, 427 N.E.2d 625, 627.

■ The general policy underlying section 5—106 of the Tort Immunity Act is that ambulance operators should be shielded from personal liability for decisions made and actions taken while responding to an emergency. If the operator is haunted by the possibility of facing devastating personal liability for actions taken in the course of responding to an emergency, then employee performance will certainly be hampered. See *Cozadd,* 159 Ill. App. 3d at 458, 512 N.E.2d at 815.

Ingrum argues that these same considerations apply to operators of private ambulance services as well. Yet, these private operators are not excused for their acts of negligence. Ingrum contends that the presence of an emergency is a circumstance which should operate equally in considering whether an ambulance operator has exercised reasonable care.

Applied to the case at hand, this argument contains a fatal assumption—that private ambulance service is available. Oakland, Illinois, is a community of approximately 1,000 people. Like many small communities across Illinois, Oakland is not served by a private ambulance company. As sovereign, the governmental entity undertakes many activities as an obligation to its citizens, performing functions

which an individual would not undertake. To hold Oakland responsible for the full consequences of providing ambulance services would lead to hesitation on the part of government to undertake and perform this essential duty. (See *Martin*, 180 Ill. App. 3d at 962, 536 N.E.2d at 740.) We find the statute reasonably designed to remedy this threat to the public health and general welfare.

Finally, Ingrum contends that section 5—106 of the Tort Immunity Act grants special privileges to Oakland, in violation of the special legislation proscription (Ill. Const. 1970, art. IV, §13) and the equal protection guarantees (Ill. Const. 1970, art. I, §2) of the Illinois Constitution.

The availability of the right of contribution for acts of negligence is governed by the public or private status of the ambulance. The historical rationale supporting immunity for those activities unique to government is the characterization of the activity as one of "official discretion." Ingrum cites *Currie v. Lao* (1990), 198 Ill. App. 3d 625, 632, 556 N.E.2d 318, 323, *aff'd* (1992), 148 Ill. 2d 151, 592 N.E.2d 977, in support of her contention that operation of an ambulance service is "ministerial" by nature and should not be accorded immunity for acts of negligence. Furthermore, in his specially concurring opinion in *Currie*, Justice Heiple stated: "It is well settled that the negligent operation of a motor vehicle is not, as a matter of law, a uniquely governmental function." *Currie*, 198 Ill. App. 3d at 632, 556 N.E.2d at 323.

If operation of an ambulance service is not a uniquely governmental undertaking and not characterized as conduct invoking "official discretion," then, Ingrum argues, its status as a public entity has been arbitrarily assigned. Accordingly, Ingrum claims to have been denied equal protection under the Contribution Act on the mere fortuitous circumstance that she collided with a public ambulance. Furthermore, if Oakland's operation of an ambulance service is qualitatively equal to the same service provided by private companies, then granting privileges of tort immunity to Oakland violates the proscription against special legislation.

Whether a law is challenged as special legislation or as violative of equal protection, the controlling question is the same: is the statutory classification rationally related to a legitimate State interest? (*Bilyk*, 125 Ill. 2d at 236, 531 N.E.2d at 3.) The legislature has broad latitude and discretion in drawing statutory classifications to benefit the general welfare, and the classification will be upheld if any set of facts can be reasonably conceived which justify distinguishing the class to which the law applies from the class to which the statute is

inapplicable. (*Bilyk*, 125 Ill. 2d at 236, 531 N.E.2d at 3.) The substantial involvement of taxpayers in funding the operation of a public ambulance service provides a rational basis for differentiating between the liability of public and private ambulance services.

We find section 5—106 of the Tort Immunity Act may be used as an affirmative defense in action for contribution.

Reversed and remanded.

STEIGMANN, P.J., and KNECHT, J., concur.