LINDA G. BROCK, Indiv. and as Independent Adm'r of the Estate of Randall Brock, Plaintiff, v. ANDERSON ROAD ASSOCIATES *et al.*, Defendants and Counterplaintiffs-Appellants (Wauconda Fire Department *et al.*, Defendants and Counterdefendants-Appellees).

Second District   No. 2—97—1282

Opinion filed November 17, 1998.

Robert J. Franco and Christopher M. Cano, both of Bollinger, Ruberry & Garvey, of Chicago, for appellants.

Steven M. Puiszis, Nancy G. Lischer, and Karen Tinglin, all of Hinshaw & Culbertson, of Chicago, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Counterplaintiffs, Anderson Road Associates (Anderson) and James Construction Corporation (James Construction), appeal from the trial court's order dismissing their counterclaims for contribution against counterdefendants, Wauconda fire department (fire department) and emergency medical technicians Michael Young, Robert Rucker, Rodney Feltner, Albert Schlick III, and David Dato (collectively EMTs). We affirm.

The following facts are taken from the record. On August 9, 1994, plaintiff, Linda Brock, in her individual capacity and as independent administrator of the estate of Randall Brock, filed a complaint naming numerous defendants, including Anderson, James Construction, the fire department, and the EMTs. The facts in the complaint are as follows. Randall Brock worked as a carpenter's apprentice at a jobsite known as Aspen Grove in Wauconda, Illinois. Anderson was the developer, and James Construction was the codeveloper and contractor of Aspen Grove. On August 11, 1993, Brock sustained a heat-related illness while working and subsequently died.

On August 22, 1995, plaintiff filed her second amended complaint. In counts I and II, respectively, plaintiff alleged that Anderson and James Construction breached their duty to provide a safe workplace. Counts III through VII were directed against the EMTs and alleged negligence and willful and wanton conduct. Count VIII alleged that the fire department was liable based on the theory of *respondeat superior*. The fire department and the EMTs filed an amended motion to dismiss in which they argued that they were immune from liability and that plaintiff failed to sufficiently plead willful and wanton conduct as a matter of law.

On November 3, 1995, Anderson and James Construction filed separate counterclaims seeking contribution against the fire department and the EMTs. On March 19, 1996, the trial court dismissed plaintiff's second amended complaint with prejudice. The court found applicable the immunities under section 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2—201 (West 1992)), section 17(a) of the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/17(a) (West 1992)), and section 1 of the Law Enforcement Emergency Care Act (745 ILCS 20/1 (West 1992)). Thereafter, plaintiff appealed.

This court's mandate issued on March 17, 1997. See *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16 (1997). In upholding the trial court's dismissal, we determined that the EMTs could assert immunity for their alleged negligence only under section 17(a) of the

EMS Act and that the evidence was insufficient to constitute willful and wanton conduct. *Brock*, 287 Ill. App. 3d at 23, 26-27.

On October 29, 1997, the fire department and EMTs filed a motion to dismiss the counterclaims for contribution. Pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1992)), they argued that the counterclaims should be dismissed because the trial court determined that plaintiff's complaint failed to sufficiently plead facts showing willful and wanton conduct and the counterclaims did not plead additional facts. Pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 1992)), they maintained that the immunity barring plaintiff's second amended complaint applied with "equal force and effect" to the counterclaims. On November 20, 1997, the trial court dismissed the counterclaims with prejudice. Thereafter, Anderson and James Construction filed this timely appeal.

Anderson and James Construction raise one primary contention on appeal—the trial court erred in dismissing their counterclaims for contribution. They argue that a contribution action may be maintained despite the applicability of common-law or statutory immunity barring plaintiff's action. They assert that courts have been reluctant to deny a contribution claim because of a competing immunity provision. They also maintain that the right to contribution is fundamental and should be denied only in limited circumstances.

Anderson and James Construction argue that the policies supporting the right to contribution outweigh those favoring immunity. They stress that the right to contribution is equitable in nature and constitutes an action separate and distinct from an injured party's cause of action. According to Anderson and James Construction, the immunity afforded pursuant to the EMS Act is not absolute because it affords immunity only for negligent acts or omissions. In addition, they assert that the purpose of this immunity is to limit malpractice liability and, because malpractice liability is unrelated to the issue of proportional responsibility, allowing a contribution action would not defeat the policies supporting immunity. They also argue that a denial of their right to contribution is tantamount to indemnification.

In reply, the fire department and the EMTs respond that the trial court properly dismissed the contribution claims because Anderson and James Construction failed to establish both negligence and willful and wanton conduct. In arguing that the public policies underlying governmental immunity outweigh those supporting contribution, they assert that governmental immunity protects governmental officials from interference with governmental functions. Absent immunity, governmental officials face the threat of personal liability, which impedes their ability to perform their duties. According to the fire

department and the EMTs, the policy considerations relating to governmental immunities apply with equal force to the EMTs and are even more "compelling" in this context. By not affording the EMTs immunity, there would be a chilling effect on their willingness to render emergency care and on their discretion to make emergency responses. The fire department and EMTs assert that permitting a contribution claim would abrogate the purpose of immunity.

■■ Before we begin our analysis, we briefly note that our standard of review governing dismissals pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1992)) is *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). When the right to contribution competes against the right to immunity, courts employ a balancing test to weigh the policy considerations. *Ramsey v. Morrison*, 175 Ill. 2d 218, 225 (1997). In many instances, the right to contribution has prevailed over immunity. See, *e.g., Doyle v. Rhodes*, 101 Ill. 2d 1, 14 (1984) (employer's immunity pursuant to Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, pars. 138.5(a), 138.11) did not bar claim to contribution); *Stephens v. McBride*, 97 Ill. 2d 515, 524 (1983) (notice provisions in Tort Immunity Act did not preclude contribution action); *Larson v. Buschkamp*, 105 Ill. App. 3d 965, 971 (1982) (contribution policies prevailed over parent-child tort immunity doctrine); *Wirth v. City of Highland Park*, 102 Ill. App. 3d 1074, 1081-82 (1981) (interspousal tort immunity did not bar contribution action). However, in other instances, the policies supporting immunity have outweighed those favoring contribution. See, *e.g., Ramsey*, 175 Ill. 2d at 227 (coemployee immunity pursuant to Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)) prevailed over contribution); *Henrich v. Libertyville High School*, 289 Ill. App. 3d 809, 817 (1997), *appeal allowed*, 175 Ill. 2d 527 (1998) (policies supporting school district immunity afforded under Tort Immunity Act outweighed contribution policies); *Buell v. Oakland Fire Protection District Board*, 237 Ill. App. 3d 940, 943 (1992) (Tort Immunity Act barred contribution action against ambulance operators); *Lietsch v. Allen*, 173 Ill. App. 3d 516, 521 (1988) (municipality's immunity pursuant to Tort Immunity Act defeated contribution action).

■ Although many cases have balanced the competing immunity and contribution policies, none have specifically addressed whether the policies supporting immunity pursuant to the Emergency Medical Services (EMS) Systems Act (EMS Act) (210 ILCS 50/1 *et seq.* (West 1992)) outweigh those favoring contribution. Accordingly, we consider the following competing policies. The EMS Act was enacted for the following purpose:

> "to provide the State with a system for emergency medical services by establishing within the State Department of Public Health a central authority responsible for the coordination and integration of all State activities concerning pre-hospital emergency medical services and the overall planning, evaluation, and regulation of pre-hospital emergency medical services systems." 210 ILCS 50/2 (West 1992).

Section 17(a) of the Act provides:

> "Any person, agency or governmental body licensed or authorized pursuant to this Act or its rules, who in good faith provides life support services *** in an emergency shall not be civilly or criminally liable as a result of their acts or omissions in providing those services unless the acts or omissions *** are inconsistent with the person's training or constitute willful or wanton misconduct." 210 ILCS 50/17(a) (West 1992).

The purpose of this immunity provision is to encourage emergency medical response without the threat of malpractice liability "for every bad outcome or unfortunate occurrence." *Gleason v. Village of Peoria Heights*, 207 Ill. App. 3d 185, 188-89 (1990). When rendering medical assistance in emergency situations, medical personnel should not "be afraid to do whatever they can under less than ideal circumstances." *Gleason*, 207 Ill. App. 3d at 189.

■ By comparison, the right to contribution was recognized in *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1 (1977). In *Skinner*, the supreme court noted:

> " 'There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free.' " *Skinner*, 70 Ill. 2d at 13, quoting W. Prosser, Torts § 50, at 307 (4th ed. 1971).

The Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 1992)) codified the supreme court's decision in *Skinner*. *Doyle*, 101 Ill. 2d at 8. Section 2(a) of the Contribution Act provides:

> "Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (West 1992).

Contribution focuses on culpability and on the equitable distribution of loss among the responsible parties. *Doyle*, 101 Ill. 2d at 14. The

right to contribution rests upon the notion that responsible parties should pay only their proportionate share of liability. *Ramsey*, 175 Ill. 2d at 224.

■ We believe that the policy considerations supporting immunity pursuant to the EMS Act outweigh those supporting the right to contribution. We are not persuaded by Anderson's and James Construction's argument that allowing a right to contribution would not defeat the purpose of the EMS Act. The threat of impending liability either in tort or by way of contribution is detrimental to the ability of medical personnel to effectively perform their duties. Medical personnel work under extreme circumstances and must be able to make life-saving decisions. Allowing a third party to maintain a contribution action would not only impede the EMTs' ability to render effective medical care, but it would also deter many from entering this profession and working under such circumstances. See *Stephens v. Cozadd*, 159 Ill. App. 3d 452, 458 (1987) (allowing third-party action would preclude public officials from exercising best judgment without fear of exposure to personal liability and would render the search for potential employees willing to work under such conditions impossible).

In addition to these policy considerations, the implications of allowing recovery for contribution, but not in tort, are simply illogical. See *Lietsch*, 173 Ill. App. 3d at 520, *Buell*, 237 Ill. App. 3d at 943. Permitting a third party, but not a plaintiff, to recover from another defendant would afford the third party a wider basis for recovery. *Lietsch*, 173 Ill. App. 3d at 520. For example, a third party could then recover for negligence, while a plaintiff would be limited to recovery for willful and wanton conduct. *Lietsch*, 173 Ill. App. 3d at 520. As the fire department and EMTs assert, this result is "nonsensical." See *Lietsch*, 173 Ill. App. 3d at 520. After weighing the policy considerations and the ramifications, we believe that the immunity afforded under the EMS Act must prevail over the right to contribution.

Our conclusion is consistent with the policies favoring immunity espoused in *Buell v. Oakland Fire Protection District Board*, 237 Ill. App. 3d 940 (1992). In *Buell*, the plaintiff sued a public ambulance service and its employee for personal injuries he sustained when the ambulance in which he was being transported collided with an automobile. The driver of the automobile filed a counterclaim for contribution against the ambulance service and its employee, alleging negligence and willful and wanton conduct. In response to the counterclaim, both the ambulance service and its employee filed a motion for summary judgment based on the Tort Immunity Act. After the trial court denied the motion, the ambulance service and its employee filed a motion for leave to file a first affirmative defense in

which they raised the defense of immunity pursuant to the Tort Immunity Act. *Buell*, 237 Ill. App. 3d at 942. This motion was also denied, and an interlocutory appeal followed. *Buell*, 237 Ill. App. 3d at 942.

On appeal, the issue was whether the Tort Immunity Act constituted a valid defense in a contribution action. The reviewing court found that the policies supporting the Tort Immunity Act outweighed those favoring contribution. *Buell*, 237 Ill. App. 3d at 943. In so finding, the court observed that if the right to contribution prevailed over immunity, the ambulance service would be subject to liability from a third party on a broader basis than it would be to the injured plaintiff. *Buell*, 237 Ill. App. 3d at 943. The court also emphasized the importance of protecting the ambulance operators from liability for decisions made in response to emergencies. *Buell*, 237 Ill. App. 3d at 944. In addition, the court stated that their exposure to personal liability would impede their performance. *Buell*, 237 Ill. App. 3d at 944. Although the immunity afforded to the ambulance operators in *Buell* was pursuant to the Tort Immunity Act, we believe that the policies are equally applicable in the case *sub judice* and find no merit in Anderson's and James Construction's assertion that authority relating to governmental immunity is not instructive.

Anderson's and James Construction's reliance upon *Wirth v. City of Highland Park*, 102 Ill. App. 3d 1074 (1981), is misplaced. In *Wirth*, we determined that interspousal immunity did not bar a contribution action. *Wirth*, 102 Ill. App. 3d at 1081-82. However, as the fire department and the EMTs correctly maintain, contribution did not defeat the central purpose of interspousal immunity. In contrast, allowing a contribution action in this case would have a detrimental impact upon the EMTs' ability to exercise proper judgment when rendering emergency medical assistance, thereby abrogating the purpose of immunity under the EMS Act.

Finally, we find meritless Anderson's and James Construction's argument that barring a contribution action in this instance would, in effect, require them to indemnify the fire department and the EMTs. Initially, we observe that Anderson and James Construction have violated Supreme Court Rule 341(e)(7) (155 Ill. 2d R. 341(e)(7)) by failing to cite any authority for this proposition. Accordingly they have waived this argument for our review. See *Lewis X. Cohen Insurance Trust v. Stern*, 297 Ill. App. 3d 220, 225 (1998) (argument unsupported by citation to authority deemed waived on appeal). We nevertheless emphasize that indemnification and contribution are separate theories of recovery and distinct causes of action that are governed by diverse requirements. *Heinrich v. Peabody International Corp.*, 99 Ill. 2d 344, 349 (1984). Absent authority stating otherwise, we decline to depart from this statement of the law.

Thus, the immunity afforded to the EMTs pursuant to the EMS Act serves as a bar against Anderson's and James Construction's contribution action. For the same reasons, the fire department is also shielded from liability under the theory of *respondeat superior.* Accordingly, the trial court properly dismissed the counterclaims for contribution against the EMTs and the fire department.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HUTCHINSON and RAPP, JJ., concur.