SECOND DIVISION 

December 14, 1999 

No. 1-98-1743

ROBERT GREEN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff-Appellant,

v.

THE BOARD OF THE MUNICIPAL EMPLOYEES', OFFICERS' AND OFFICIALS' ANNUITY AND BENEFIT FUND OF CHICAGO; and JAMES STACK, Individually and Personally,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Stephen A. Schiller,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Robert Green filed a class action suit on behalf of himself and all others similarly situated, alleging that defendants, the Board of the Municipal Employees', Officers' and Officials' Annuity and Benefit Fund of Chicago, and its former executive director, James Stack, had damaged plaintiff and other putative class members through their calculation of employees contributions into the Municipal Employees', Officers' and Officials' Annuity Fund.  The trial court dismissed the cause in its entirety.  Plaintiff appeals, alleging various errors in the trial court's dismissal of his complaint.

Plaintiff is a retired City of Chicago employee and a member of the Municipal Employees', Officers' and Officials' Annuity and Benefit Fund of Chicago (Fund).  The Fund was created pursuant to section 8-101 of the Pension Code, which requires such a fund to be created in any Illinois city of 500,000 or more inhabitants.  40 ILCS 5/8-101 (West 1996).  Money in the Fund is used to pay certain benefits, including retirement annuities, to persons who qualify under the statute.  Plaintiff's class action suit alleged that defendants, the Board of the Municipal Employees', Officers' and Officials' Annuity and Benefit Fund of Chicago, and its former executive director, James Stack (hereafter collectively referred to as "the Board"), had calculated employee contributions to the Fund that were in excess of the statutory amount permitted in section 8-

234 of the Pension Code.  40 ILCS 5/8-234 (West 1996).

The gist of plaintiff's complaint was that the calculation of the employees' contributions into the Fund were figured using a different definition of "salary" than was used in calculating an employees' retirement benefit.  The parties agreed that employee contributions to the Fund were statutorily set at 8 1/2% of an employee's "actual" salary.  One method of calculating an employee's retirement annuity involves determining the highest average annual salary received by the employee for any four consecutive years within the employee's last ten years of service.  See 40 ILCS 5/8-138 (West 1996).  In calculating an annual salary for purposes of determining an annuity, section 8-233 provided that:

"where a salary rate change occur[ed] during the year, it shall be considered that the annual wage for any year [was] at such monthly, weekly, daily, or hourly salary or wage rate as was applicable for the greater number of months, weeks, days or hours, respectively, in each year under consideration."  40 ILCS 5/8-233(b) (West 1996).

Plaintiff's complaint provided the following example of how overpayments to the Fund might occur.  An employee making a salary of $24,000 per year receives a raise, effective August 1, to $36,000.  Under section 8-233(b), his salary for that year for purposes of calculating an annuity was $24,000, rather than the "true average" of $31,000, because his annual salary was $24,000 for seven months during the year and $36,000 for only five months.  However, the contributions actually made were based on actual salary and were thus 8 1/2% of the $24,000 annual salary through July 31 and 8 1/2% of $36,000 thereafter.  Therefore, the contributions for the year were made on the actual average salary of $31,000 and were thus more than 8 1/2% of the salary ($24,000) used for annuity purposes.  Plaintiff claims that the above results in a violation of section 8-234, which states that:

"The total of salary deductions for employee contributions for annuity purposes to be considered for any 1 calendar year shall not
 exceed that produced by the application of the proper salary deduction rates to the highest annual salary considered for annuity purposes for such year."  40 ILCS 5/8-234 (West 1996).

Plaintiff's complaint stated that he was bringing the action on "his own behalf and in a representative capacity on behalf of all persons who are or were employed by the City of Chicago, who have received or will receive salary or wage increases at various times[] in the last ten years they were or will be employed by the City of Chicago
, and who are now or will be retired."

After the instant litigation was commenced, the legislature amended section 8-233, effective June 27, 1997, to add an alternative method of calculation.  Pub. Act 90-31, eff. June 27, 1997 (amending 40 ILCS 5/8-233 and various other sections of the Pension Code).  Now, where a salary rate change occurs during the year, the annual salary for purposes of determining an annuity shall be considered to be the annual equivalent of whatever the employee's salary was for the greater number of months, weeks, days, or hours, whichever is applicable, for the year under consideration, or "the annual equivalent of the average salary or wage rate in effect for the employee during the year, whichever is greater."  40 ILCS 5/8-233(c) (West 1998).  The amended statute stated that the change applied to persons withdrawing from service on or after July 1, 1990, and for each such person was intended to be retroactive to the date upon which the affected annuity began.  40 ILCS 5/8-233(d) (West 1998).  Plaintiff retired in June 1993.

In addition to alleging, in Count I of his complaint, that the Board's calculation of contributions to the Fund was in violation of the statute, plaintiff alleged in Counts II, III, and IV, that the calculation of contributions resulted in due process violations of both the Illinois and Federal Constitutions.  On July 19, 1996, plaintiff's constitutional claims were dismissed on defendants' motion pursuant to section 2-615 of the Code of Civil Procedure.  735 ILCS 5/2-615 (West 1996).  The record does not contain a transcript of the hearing at which Counts II, III, and IV were dismissed.

The Board subsequently filed a motion to dismiss plaintiff's remaining count pursuant to section 2-619 of the Code of Civil Procedure.  735 ILCS 5/2-619 (West 1996).  The Board maintained in its motion that the statutory amendment to section 8-233 had rendered plaintiff's suit moot.  The motion was filed on May 30, 1997, after the legislation had been passed by the General Assembly but prior to it being signed into law by the Governor.  Plaintiff was given until June 27, 1997, to respond to the Board's motion but failed to do so.  On October 31, 1997, the Board filed a second motion to dismiss based on the fact that the Governor had signed the bill, thus enacting it into law.  Pub. Act 90-31, eff. June 27, 1997.  Plaintiff was given until November 13, 1997, to respond to defendants' motion but again failed to do so.  The court then entered an order giving plaintiff until December 15, 1997, to file a response and scheduled a status hearing on the matter for January 15, 1998.  On January 15, 1998, plaintiff failed to appear and had still not responded to defendants' motion.  The trial court, noting that plaintiff had had ample time to file a response to the Board's motion to dismiss, dismissed plaintiff's remaining count (Count I) and dismissed the cause in its entirety.  Although a motion by plaintiff to certify the class was filed at some point during the litigation, no class was certified by the court prior to the ruling on the motion to dismiss.

On February 20, 1998, plaintiff filed a motion to vacate the dismissal, stating that plaintiff's counsel had not been present at the January 15 status hearing because he had appeared before the appellate court for oral arguments in a different case on that date.  The court denied plaintiff's motion at an April 8, 1998, hearing.

The trial court, in both its written order and oral statement denying the motion to vacate, emphasized that the dismissal had been granted based on "the merits of the motion [to dismiss] and the pleadings as they appeared before [the court] at the time."  Thus, although the court noted that plaintiff had missed a number of opportunities to file a response to the motion to dismiss, the decision to dismiss was based on the pleadings before the court and was not technically a default order.  The parties agree that the court's decision to dismiss was on the merits.

Plaintiff first contends that the trial court erred in dismissing his complaint at a status date without affording him an opportunity to respond orally or in writing to defendants' motion to dismiss.  The record, however, indicates that plaintiff was granted three continuances in the 7½ month period between the filing of the Board's motion alleging the cause to be moot and January 15, 1998, when plaintiff failed to appear and the motion to dismiss was granted.  Even if we limited our examination to the period following the Governor's signing of P.A. 90-31, the record shows that plaintiff missed two filing deadlines.  At oral arguments on this cause, plaintiff's counsel maintained that no written response was ever filed because the plaintiff's position could best be explained orally.  Plaintiff's claim that he was not given sufficient time to respond is without merit.

Plaintiff also contends that when his counsel filed a motion to vacate the dismissal and informed the court why he had been unable to attend the status hearing when the case was dismissed, the court should have accepted the explanation and vacated the motion to dismiss.  The burden of establishing sufficient grounds to vacate a judgment is on the moving party.  
Day v. Curtin
, 192 Ill. App. 3d 251, 254, 548 N.E.2d 670 (1989).  The decision to grant or deny a motion to vacate is at the discretion of the trial court and will not be reversed on review absent an abuse of that discretion.  
Day
, 192 Ill. App. 3d at 254.  However, the denial of a motion to vacate must be reversed where the movant's right to fundamental justice has been violated.  
Kessling v. United States Cheerleaders Ass'n
, 215 Ill. App. 3d 582, 583, 574 N.E.2d 1370 (1991); 
Day
, 192 Ill. App. 3d at 254.

Here, the defendants argued before the trial court that they would be prejudiced by the granting of the motion to vacate where they were paying annuitants and making adjustments under the terms of the amended statute.  The trial court, in denying plaintiff's motion to vacate, noted that plaintiff had been given ample opportunity to respond to the Board's motion to dismiss and had failed to do so, thus demonstrating a lack of diligence.  The trial court further noted that defendants were entitled to some resolution.  We find that the trial court's denial of plaintiff's motion to vacate was not in error.

Plaintiff next contends that the trial court erred in dismissing his complaint as moot.  The Board's motion to dismiss alleged that plaintiff's complaint was moot due to the changes made by Public Act 90-31.  As noted above, the trial court stated that it was granting the motion to dismiss on its merits.  "An issue is moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief."  
Wheatley v. Board of Education of Township High School District 205
, 99 Ill. 2d 481, 484-85, 459 N.E.2d 1364 (1984).  A dismissal pursuant to section 2-619 is reviewed 
de
 
novo
.  
Brock v. Anderson Road Associates
, 301 Ill. App. 3d 168, 172, 703 N.E.2d 568 (1998).

Although not articulated in his brief on appeal, plaintiff maintained at oral arguments that the legislative amendment to section 8-233 failed to make the action moot as applied to him because even after the amendment his contributions for 1991, the only year detailed in the record, still exceeded the "cap" found in section 8-234.  40 ILCS 5/8-234 (West 1996).  Plaintiff further maintained at oral arguments that the Board had conceded as much in its brief on appeal where it stated that even after the statutory amendment plaintiff was entitled to $20 for 1991.  Counsel for the Board denied that the Board's brief so stated.

Upon examining the Board's brief on appeal, it appears the $20 the Board acknowledges plaintiff was entitled to receive is not an admission that the statutory amendment failed to make plaintiff whole but is instead a reference to the retroactive monthly increase in plaintiff's recomputed annuity following the amendment.
(footnote: 1)  The Board also states that, as directed in the statute, it has paid plaintiff a lump sum amount of $1,014.24 as a result of the retroactive statutory adjustment.
(footnote: 2)  There does not appear to be an acknowledgment in the Board's brief that plaintiff's 1991 contributions exceeded 8 1/2% of plaintiff's 1991 salary considered for annuity purposes under the amended statute.  Nor do our own calculations reveal that plaintiff's contributions for 1991 resulted in a violation of the statutory limits under the amended version of the statute.
(footnote: 3)  We fail to see, and plaintiff has failed to show us, how the amendment, which applied retroactively to persons retiring after 1990, failed to moot the action as applied to him.  Therefore, as applied to plaintiff, the trial court correctly found that the legislative amendment made the action moot.

Plaintiff next maintains that because the amended statute was retroactive only to 1990, it failed to fully compensate those putative class members who retired prior to 1990 and the trial court thus erred in dismissing the class action complaint on mootness grounds.  Before a suit can be maintained as a class action, certain statutory prerequisites must be met.  
Wheatley
, 99 Ill. 2d at 486.  The prerequisites are that the class be so numerous that joinder of all members is impracticable, that there be questions of fact or law common to the class and that such common questions predominate over any questions affecting only individual members, that the representative parties will fairly and adequately protect the interests of the class, and that the class action be an appropriate method for the fair and efficient adjudication of the controversy.  
735 ILCS 5/2-801 (West 1996).

In 
Wheatley
, our
 supreme court was faced with a factual scenario similar to that of the instant cause.  The putative class in 
Wheatley
 consisted of the named plaintiffs and other teachers who were honorably dismissed by the defendant school board.  The defendant board moved to dismiss the cause as moot after the named plaintiffs and a number of the other putative class members were either reemployed or were offered, but refused, reemployment by the board.  The court first found that the interests of the representative plaintiffs were moot because there was no longer a controversy between the defendant board and the plaintiffs.  
Wheatley
, 99 Ill. 2d at 486.  The named representative plaintiffs in 
Wheatley
 then urged that the action should not be dismissed even if their own claims were moot because relief could still have been granted for teachers who were not offered reemployment.  As here, class certification had not been granted prior to the court's dismissal of the cause.  The 
Wheatley
 court held that:

"[b]ecause the claims of the named representatives here have been resolved, they are not proper parties who would fairly and adequately protect the interest of the class they purport to represent.  Once a representative plaintiff is granted the desired relief, he is no longer a member of the class because his interests are not consistent with the interests of the other class members.  Moreover, where a named party does not have an interest in the litigation, there is no reason to expect zealous representation by him on behalf of the class.  [Citations.]  No remaining member of the class sought to substitute himself as a named representative and, therefore, [the certification requirement that there be questions of fact or law common to the class] could not be met.  We therefore conclude that the requirements for class certification cannot be met and that the named plaintiffs may not maintain this action."  
Wheatley
, 99 Ill. 2d at 487.

The amended statute in the instant cause stated that it applied retroactively to persons withdrawing from service on or after July 1, 1990.  40 ILCS 5/8-233 (West 1998).  Thus, the statutory amendment acted to essentially moot the claims of any putative class members who retired after July 1, 1990.  Plaintiff, who retired in 1993, was made whole by the statutory amendment.  As in 
Wheatley
, the cause is moot as to plaintiff, and it can no longer be said that there are questions of fact or law common to the putative class or that plaintiff would fairly and adequately protect the interests of those putative class members who were not affected by the statute.  Also as in 
Wheatley
, no class was certified prior to the dismissal of this cause, the cause is moot as to the representative class member, and no other putative class member has stepped forward to substitute himself as a named representative.  We find, therefore, that the trial court properly dismissed plaintiff's class action complaint where the statutory amendment made the action moot as to plaintiff and made it impossible for the requirements of class certification to be met.

Plaintiff contends, however, that because the issues raised in his complaint were of "substantial public interest," the trial court erred in granting the Board's motion.  According to plaintiff, where claims present issues of substantial public interest, Illinois courts recognize an exception to the general rule of mootness.  Citing 
People ex rel. Wallace v. Labrenz
, 411 Ill. 618, 104 N.E.2d 769 (1952).  In 
Labrenz
, 411 Ill. at 622, the supreme court stated that among the criteria to be considered "in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question."  Here, plaintiff fails to support his argument by applying these criteria and fails to even bring the criteria to the court's attention.  Plaintiff makes no attempt to support his position beyond stating that the issues raised must be of substantial public interest because the Illinois State Legislature addressed the issue.  Although not raised by the parties, it is important to note that section 8-233 was one of nineteen different statutory sections affected by P.A. 90-31.  Our examination of the legislative debates reveals that the changes made to section 8-233 were not mentioned in either the House or the Senate floor debates.  Plaintiff's contention that his action is of substantial public interest simply because the legislature passed a bill relating to the same subject is unpersuasive.

Plaintiff next contends that pre-judgment interest should be awarded on the money that he and other class members were entitled to under the amended statute.  According to plaintiff, the "settlement" of this cause, represented by the statutory amendment, failed to address interest payments on monies wrongfully withheld.  This argument is without merit because the statutory amendment specifically stated that the recomputed annuity amounts due were to be paid in a lump sum to affected individuals, 
without
 
interest
.  40 ILCS 5/8-233(d) (West 1998) (emphasis added).  Further, there is no evidence in the record that the statute was amended as a result of this particular cause of action.  Therefore, the amending of the statute is not, as maintained by plaintiff, a "settlement."  Nor did the cause of action filed by plaintiff end in any sort of settlement or judgment upon which the court might grant interest.

Counsel for plaintiff next maintain that if this court affirms the trial court's dismissal of this cause as moot, a remand for an award of attorney fees is appropriate.  Plaintiff's counsel maintain that by bringing this "successful" litigation, they "have performed a significant service for a significant number of aggrieved persons."  Counsel also suggest that this court is not precluded from awarding attorney fees in excess of the damages awarded.

Plaintiff claims, without any support, that the legislative amendment that made his cause moot was "clearly passed in response to this litigation."  Rather than directing the court to some legislative history that might substantiate his claim, plaintiff instead asserts that "[t]o believe otherwise, one would have to accommodate for a very unique coincidence."  As noted previously, section 8-233 was one of nineteen different statutory sections affected by P.A. 90-31 and our examination of the legislative debates reveals that the changes made to section 8-233 were not mentioned in either the House or the Senate.  There is no evidence that the instant litigation spurred the statutory amendment.

Further, no class was ever certified.  An award of fees would thus be inappropriate here because the persons from whom plaintiff's counsel seeks fees, with the exception of plaintiff, never had any attorney-client relationship with counsel or an opportunity to exclude themselves from the class.  See 
American Pipe & Construction Co. v. Utah
, 414 U.S. 538, 552, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974) (potential class members have no duties or responsibilities in relation to an action until the existence and limits of the class have been established); 
cf.
 
In re Chicago Flood Litigation
, 289 Ill. App. 3d 937, 944, 682 N.E.2d 421 (1997) (finding that holding the appellees responsible for attorney fees to class counsel, where appellees had opted out of the class and retained other counsel, would "contradict the consensual nature of an attorney-client relationship in that it would require all putative class members to be obligated to class counsel even though they timely exercised their right of exclusion and retained their own counsel.").

Moreover, plaintiff's action cannot be considered successful where the cause was dismissed on defendants' motion in part because plaintiff's counsel failed to appear and failed to contest the Board's motion to dismiss in a timely fashion.  "[C]lass representatives and class counsel are not entitled to charge absent class members for reimbursement of attorney fees or costs if the class action is unsuccessful."  
In re Chicago Flood Litigation
, 289 Ill. App. 3d at 943.

Finally, plaintiff maintains that the trial court erred in dismissing, earlier in the litigation, his due process claims (counts II, III, and IV of plaintiff's complaint).  The trial court found that there was no allegation of a taking of property in the instant cause where the 8 1/2% deducted from plaintiff's wages was being distributed to plaintiff's credit in the Fund.  Plaintiff's unsupported assertion to the contrary does not persuade us that the trial court erred in so finding.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

COUSINS, P.J., and GORDON, J., concur.

FOOTNOTES
1:
The actual increase in plaintiff's monthly annuity as a result of the statutory amendment was $21.12.  In the alternative, the $20 figure the parties refer to may have come from a typographical error in plaintiff's salary figures on page 6 of his appellate brief.  If the incorrect monthly salary of $3,032 (rather than the figure of $3,072 used everywhere else) is plugged into the 1991 calculations, it results in a $20.40 discrepancy between the actual contributions made by plaintiff in 1991 and the salary contribution cap.

2:
This amount appears to approximate four years worth of retroactive monthly payments, from June 1993, when plaintiff retired, until June 1997, when the statutory change occurred.

3:
As noted, 1991 was the only year for which plaintiff's actual salary information was provided.  By our calculation, plaintiff's salary for annuity purposes for 1991 under the amended version of section 8-233 would be $37,797.  Plaintiff's 8 1/2% employee contribution would thus be $3,212.75.  According to the figures provided in plaintiff's brief, this is the same amount that was actually deducted from plaintiff's paychecks for 1991.  Therefore, the statutory amendment, and resulting recomputation of plaintiff's annuity and lump sum payment, appeared to have corrected any inequity that may have existed in regard to plaintiff.